(597 P.2d 268)

No. 50,837

STATE OF KANSAS, *Appellant,* v. HOBERT HAYES, *Appellee.*
Petition for review denied September 14, 1979.

Opinion filed July 13, 1979.

*Joan M. Hamilton,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for appellant.

*Robert M. Brown,* of Topeka, for appellee.

Before MEYER, P.J., REES and SPENCER, JJ.

REES, J.: The State has brought an interlocutory appeal (K.S.A. 1978 Supp. 22-3603) from a trial court order suppressing certain evidence found to be the fruit of an illegal stop. The State argues the stop was made pursuant to K.S.A. 22-2402, the Kansas "stop and frisk" statute. We reverse and remand for further proceedings.

The sole issue presented on appeal is whether the stop of defendant's car was authorized under K.S.A. 22-2402(1). That statute authorizes the stopping and questioning of any person in a public place by a law enforcement officer who *reasonably suspects* such person is committing, has committed, or is about to commit a crime. The parties accept the proposition that, under the facts of this case, whether reasonable suspicion existed is for our determination as a question of law. See *State v. McClanahan,* 212 Kan. 208, 210-211, 510 P.2d 153 (1973).

We will review the facts upon which the trial court based its decision and upon which we base ours. On the evening of August 31, 1978, reserve sergeant Pease of the Topeka police department was on patrol duty from 6:00 p.m. until 2:00 a.m. the next morning. At approximately 1:20 a.m. on the morning of September 1, 1978, Pease was driving north on Topeka Avenue at about the 600 block. Pease observed a southbound car stop near a female who was walking north along the curb. The driver of the car was defendant. Pease was aware from information supplied by the police department that a number of rapes had occurred in this general area and it was suspected that several were committed by a short black male whose victims were female hitchhikers he had picked up. Earlier in the evening, Pease had questioned

two other persons concerning the rapes. Defendant appeared to fit the general description of the rape suspect. Pease stopped his patrol car and observed defendant, his car and the female for approximately thirty to forty-five seconds. While Pease watched defendant talk to the female on the curb, defendant turned and saw Pease and immediately resumed travel south on Topeka Avenue. Pease turned the patrol car around, pursued defendant with his red lights on and radioed for a backup unit.

Defendant was ultimately stopped just south of the intersection of 9th and Topeka Avenue. After stopping defendant, Pease radioed in defendant's license tag number. Shortly thereafter, officers Havens and Smith arrived in response to Pease's call for a backup unit. At about the same time Havens and Smith arrived, Pease approached defendant's car to obtain defendant's driver's license. While approaching defendant's car, Pease observed defendant bending over in the car as if to place or take something from under the front seat. Pease became concerned for his safety. Pease obtained defendant's driver's license without incident and turned it over to Havens who radioed in the information requesting a computer check as to whether or not defendant might be wanted. Detective Gilchrist, who was working the same area for rapes, overheard defendant's name mentioned in the broadcast and radioed Pease that defendant had been known to be armed. The computer check showed two outstanding warrants for defendant, a city warrant for a traffic violation and a no-show misdemeanor warrant.

Pease and Havens testified it was customary to allow persons picked up on outstanding traffic and misdemeanor warrants to drive their own cars to the police station. Because they had information indicating defendant might be armed, plus the fact that defendant was seen bending over in the front seat of his car as if to place something under the seat, Pease and Havens agreed to search the area within the defendant's control prior to permitting him to drive his car from the scene. Pease and Havens, standing on opposite sides of the car, approached the car in order to accomplish their search. Pease removed defendant from the car and took him to the back of the car where he advised defendant of the outstanding warrants. At the same time, Havens opened the car door on the passenger side and leaned across looking on the floor near the front seat. He observed the butt of a .22 caliber

pistol protruding from under the seat and seized it. At that time, Havens placed the gun on top of the car, walked back to where defendant and Pease were standing, and advised defendant he was under arrest on the outstanding warrants and for carrying a concealed deadly weapon in violation of a city ordinance.

While Havens had been searching the car, Pease had patted defendant down and found no further weapons. After placing defendant under arrest, Havens returned to the car, took the keys from the ignition, and searched the locked glove box and trunk. Defendant verbally objected to the search of the glove box. Inside the glove box Havens found checks from Clark's School of Business.

The information charges defendant with thirty-one various counts of kidnapping (K.S.A. 21-3420), forgery (K.S.A. 21-3710), promoting prostitution (K.S.A. 21-3513), and perjury (K.S.A. 21-3805). The checks taken from the defendant's locked glove box, forming the basis of three counts of forgery, and the pistol were introduced as evidence at defendant's preliminary hearings. Upon hearing defendant's pretrial motion, the trial court ordered suppression of these items and pursuant to K.S.A. 1978 Supp. 22-3603 further proceedings on the charges against defendant were stayed pending this appeal.

The stop of a suspect based on reasonable suspicion that a crime has been, is being, or is about to be committed is to be distinguished from an arrest based upon probable cause. The former does not rise to the level of the latter in terms of the degree of criminally suspicious activity required. See *State v. Jackson,* 213 Kan. 219, 225, 515 P.2d 1108 (1973). In *Adams v. Williams,* 407 U.S. 143, 145-146, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972), it was stated:

"In *Terry* [392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968)], this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' . . . The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

While Kansas has codified the "stop and frisk" procedure, the situation must be judged under the reasonable searches and seizures clause of the Fourth Amendment. *State v. Jackson,* 213 Kan. at 222.

We do not have here a case involving the stop of a vehicle similar to that described in a police broadcast relevant to a recent crime. See *State v. Morin,* 217 Kan. 646, 650, 538 P.2d 684 (1975); *State v. Kearns,* 211 Kan. 158, 159-160, 505 P.2d 676, *cert. denied* 414 U.S. 841 (1973). Nor do we have a case of a person stopped solely because of his race (see *United States v. Brignoni-Ponce,* 499 F.2d 1109, 1111-1112 [9th Cir. 1974], *aff'd* 422 U.S. 873 [1975]), or because he was seen in a high crime area under *generally* suspicious circumstances (see *United States v. Martinez-Tapia,* 499 F.2d 1244, 1245 [9th Cir. 1974]; *United States v. Davis,* 459 F.2d 458 [9th Cir. 1972]).

We find Pease's articulable prior and present knowledge of the facts was sufficient for reasonable suspicion thereby authorizing his stop of defendant's car. Pease had information that numerous rapes had previously been committed in the general vicinity where he first observed defendant. Pease observed defendant pull his car over to the curb to converse with a female pedestrian. Such conduct was an interruption of the normal vehicle and pedestrian traffic flow. Pease had information that several of the recent rape incidents had involved a female hitchhiker picked up by a short black man. Although defendant was seated in his car when observed by Pease, Pease stated he thought defendant was short and fit the general description of the rape suspect.

Our conclusion is not wholly dissimilar to previous Kansas decisions. *City of Garden City v. Mesa,* 215 Kan. 674, 527 P.2d 1036 (1974). *Cf. State v. Jackson,* 213 Kan. 219 (facts did not rise to level of a reasonable suspicion). See also *State v. Holthaus,* 222 Kan. 361, 564 P.2d 542 (1977); *State v. Boone,* 220 Kan. 758, 761-765, 556 P.2d 864 (1976).

Further, our decision is in accord with *Brown v. Texas,* 47 U.S.L.W. 4810 (1979). At issue in *Brown* was a conviction for violation of a statute making it a criminal act for a person to refuse to give his name and address to an officer who has lawfully stopped him and requested the information. Contrary to the case before us, in *Brown* there were no circumstances preceding the detention that justified a reasonable suspicion, based on objective facts, that Brown was involved in criminal conduct.

The persuasiveness of *City of Overland Park v. Sandy,* 225 Kan. 102, 587 P.2d 883 (1978), in view of the recent United States Supreme Court case of *Delaware v. Prouse,* 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1391 (1979), is questionable. The State has waived reliance on *Sandy.*

The trial court suppression order must be reversed insofar as it held the stopping of defendant's car was unreasonable. We do not decide whether the subsequent search of the car was reasonable under Fourth Amendment standards since our review is limited to the initial stop. This is consistent with the trial court order which only reached the issue we decide. Accordingly, we remand for further proceedings on defendant's motion to suppress to determine the reasonableness of the search of defendant's car after the stop.

Reversed and remanded.