(878 P.2d 855)
No. 70,949

STATE OF KANSAS, *Appellee,* v. JOSEPH D. TUCKER, *Appellant.*
Petition for review denied 255 Kan. 1007 (1994).

Opinion
filed August 5, 1994.

*Gregory G. Meredith*, of Reynolds, Peirce, Forker, Berkley, Suter, Rose & Dower, of Hutchinson, for the appellant.

*Keith E. Schroeder*, assistant county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, C.J., LEWIS and GRÈEN, JJ.

LEWIS, J.: A vehicle being driven by the defendant, Joseph D. Tucker, was stopped by Reno County law enforcement officers to investigate a complaint of erratic driving. As a result of the stop, the defendant was charged with and convicted of driving while under the influence (DUI). He appeals that conviction, arguing that the police stop of his vehicle was a violation of his Fourth Amendment rights. Thus, he claims, the evidence gained as a result of that stop was inadmissible.

We affirm.

## FACTUAL BACKGROUND

Officer Donald W. Evans is a Reno County deputy sheriff. On the morning of the defendant's arrest, he was working a 7:00 a.m. to 3:00 p.m. shift. At approximately 9:50 a.m., he was advised by his dispatcher of a possible drunk driver. The original report had been given to the dispatcher by an anonymous caller, who was not identified until after the arrest was made. The caller advised that he had observed a white male driving a red 1960's model Ford pickup southbound on K-61 Highway from Inman. The caller reported the driver appeared to be drunk and was running other vehicles off of the roadway.

Upon receiving this report, Officer Evans headed north on K-61. He soon observed a red 1960's model Ford pickup heading southbound on K-61 driven by a white male. The location of the pickup, the description of the pickup, and the description of the driver were all consistent with the information provided by the anonymous informant.

Officer Evans, and Sergeant Kellogg in another car, followed the red pickup for a short distance and, during that time, concede they did not observe any erratic driving.

Despite the lack of observing erratic driving, Officer Evans stopped the vehicle to investigate the anonymous tip received a short time earlier. Officer Evans testified that the morning traffic was fairly heavy and, because of the report of a possibly intoxicated driver who had run other vehicles off the road, he stopped the vehicle in the interest of public safety.

After stopping the vehicle, the officer came face-to-face with the defendant. The officer observed that the defendant's eyes were bloodshot and asked him to take certain field sobriety tests. In the opinion of Officer Evans, the defendant failed the field sobriety tests, and he was arrested for DUI. The defendant was also asked to submit to a breath test, which returned an alcohol concentration reading of .094. This was above the presumptive DUI level of .08 in effect on the date in question. See K.S.A. 1993 Supp. 8-1567(a).

Based on the evidence outlined above, the defendant was convicted of DUI, sentenced to 90 days in jail, fined $500, and assessed $37 in court costs. The defendant was then placed on one year's probation, sentenced to five days with House Arrest, Inc., and required to attend certain alcohol information and counseling programs.

## WAS THE STOP LAWFUL?

The defendant argues that the anonymous tip which prompted the stop of his vehicle did not provide specific and articulable facts on which to base a safety stop of the vehicle pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In approaching this issue, it is important to note that we are dealing here only with a safety stop of a vehicle. The facts include

the mobility of an automobile and the extreme danger posed to the public by a drunken driver. Officer Evans, in stopping the defendant, was responding to an anonymous tip which indicated that the defendant was drunk and had been running other drivers off of the road. The propriety of Officer Evans' actions in stopping the defendant's vehicle must be considered in this context.

The testimony indicates that this vehicle was stopped for reasons of public safety. In Kansas, such a stop has been determined to be valid. In *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992), Justice Six, writing for a unanimous Supreme Court, stated: "We hold that a civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop, *if the safety reasons are based upon specific and articulable facts. State v. Fuller*, 556 A.2d 224 (Me. 1989)."

The question then becomes whether the stop in this case was based upon specific and articulable facts. The defendant argues that such a standard cannot be reached on facts provided by an anonymous caller.

This case involves the ever-changing equation used to balance the rights of an individual to be free from unwarranted intrusions of his or her freedom of movement and right to privacy with the right of the public to be protected from unreasonable danger. This equation and the balance change with the facts presented. It is clear that, when the focus of the stop or search is a mobile automobile, the requirements to justify a stop or search or arrest are lessened.

For instance, the search of a home or dwelling can seldom be justified in the absence of a search warrant. Automobiles, however, when in a mobile state, may be searched by police without a warrant due to the exigent circumstances involved:

"A note in 87 Harv. L. Rev. 835, 837, traces the history of the automobile search exception starting with *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). It is based upon and continues through *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S. Ct. 1975, 1981, 26 L. Ed. 2d 419, 428 (1970), to *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), which points up the reasons constituting exigency, the main factor of which is the mobility of the automobile and the hazard of loss of the contraband. *Brinegar v. United States, supra*, recognizes the difference between searching an automobile and searching a home. The public interest in searching an automobile generally outweighs

the interest of the individual in going on his way at least until he has been checked out." *United States v. Miller*, 532 F.2d 1335, 1338 (10th Cir.), *cert. denied* 429 U.S. 839 (1976).

*United States v. Sigal*, 500 F.2d 1118, 1121 (10th Cir.), *cert. denied* 419 U.S. 954 (1974), states: "[T]he mobility of the thing searched in the instant case is a most significant factor in determining whether [the agent's] search of [defendant's] aircraft was constitutionally permissible."

In *State v. Jaso*, 231 Kan. 614, Syl. ¶ 2, 648 P.2d 1 (1982), our Supreme Court said: "One of the specifically established and well-delineated exceptions to the Fourth Amendment ban against warrantless searches is the so-called 'automobile exception' recognized in *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (1925)."

The so-called "automobile exception" is not limited to the search warrant issue. The mobility of the automobile and the danger it presents to the public are the bases for the "safety" stop in *Vistuba*.

We recognize that generally an anonymous tip does not provide the necessary probable cause to support the issuance of a search warrant. In most instances, it will not provide the necessary probable cause to support an arrest. However, these cases are not applicable in determining whether such a tip will support a *Terry*, or safety, stop of a mobile automobile.

The so-called *"Terry"* rule provides that an individual may be stopped and questioned if the police officer has specific and articulable facts to suspect that the individual has committed or is about to commit a crime. *Terry*, 392 U.S. at 21; K.S.A. 1993 Supp. 22-2402. In *State v. Finley*, 17 Kan. App. 2d 246, 249-51, 838 P.2d 904, *rev. denied* 251 Kan. 940 (1992), we said:

"Reasonable suspicion is not the same as probable cause. In *United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989), the Court conducted a thorough examination into the meaning of reasonable suspicion. The Court stated:

'The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " [Citation omitted.] The Fourth Amendment requires "some minimal level of objective justification" for making the stop. [Citation omitted.] That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair prob-

ability that contraband or evidence of a crime will be found," [citation omitted] and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.' 490 U.S. at 7.

· "In *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), the United States Supreme Court expounded on the differences between reasonable suspicion and probable cause:

'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture" (citation omitted) that must be taken into account when evaluating whether there is reasonable suspicion.'

See also *State v. Hayes*, 3 Kan. App. 2d 517, 597 P.2d 268, *rev. denied* 226 Kan. 793 (1979), for a discussion of the distinction between probable cause and reasonable suspicion.

. . . .

"It is important to remember that . . . the law enforcement officer does not have to *know* that the defendant committed a crime. Merely pointing to some facts that would cause a reasonable person to be suspicious is enough to conduct a *Terry* stop."

Over the years, the *Terry* rule has been broadened for use in cases dealing with mobile automobiles. The stop for "safety reasons" approved in *Vistuba* is not a stop prompted by specific and articulable facts of suspected criminal activity. It is a stop justified by the mobility of the automobile and the danger to the public.

"Nothing in the Fourth Amendment requires that the 'specific and articulable facts' relate to suspected criminal activity, although that was the factual context of both *Terry* and *Griffin*. If we were to insist upon suspicion of activity amounting to a criminal or civil infraction to meet the *Terry/Griffin* standard, we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and foster public safety." *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989).

The constant balancing of public safety against individual rights resulted in our Supreme Court decision in *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983). In that case, the nondiscretionary stopping of *every vehicle* on the roadway at a driver's license/DUI roadblock was held to be constitutional. The United States

Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), had effectively overruled the decision of *City of Overland Park v. Sandy*, 225 Kan. 102, 587 P.2d 883 (1978). *Prouse* declared unconstitutional the unrestrained discretionary stopping of vehicles for supposed "driver's license checks" which our Supreme Court had approved in *Sandy*. In *Deskins*, the roadblock involved no discretionary "spot checks"; instead, all vehicles on the road were stopped and checked without any suggestion whatsoever of criminal activity or unsafe driving. Yet these roadblock stops were approved. The reasoning was as follows:

"In applying the balancing test of the degree of governmental or public interest against the degree of intrusion upon the individual's constitutionally protected rights, the courts have developed a three-factor test or analysis which was stated in *Brown* as:

'weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.' *Brown v. Texas*, 443 U.S. at 50-51." 234 Kan. at 541.

The court in *Deskins* went on to say:

"When the test enunciated in the cases and the foregoing factors are taken into consideration and applied to the DUI roadblock in question does it pass constitutional muster? We think it does. The roadblock in question was a joint effort of the highway patrol, Shawnee County sheriff's office and Topeka police department. Thirty-five to forty officers were briefed ahead of time by supervisory personnel of the Topeka police department. The officers were specifically advised to check for driver's license violations and signs of drunk driving. The roadblock was established in a well-lighted area of a four-lane highway. Several police cars were utilized, with a car with its red lights flashing located at each of the four corners of the roadblock. The time of detention was minimal, unless violations were noted, and sufficient officers were present to assure minimum intrusion, time-wise. All vehicles going in either direction were stopped and subjected to the license check. The officers in the field had no discretion to pick and choose who would or would not be stopped. The offices were in uniform and readily recognizable as being police officers. The location was selected by supervisory personnel and not the officers in the field.

"The Topeka DUI roadblock did not involve the unbridled discretion of *the officer in the field which was held oppressive and subject to abuse in Prouse. When we consider the enormity of the injury and damage caused by the drinking driver and the vital interest of every citizen in being protected so far as possible upon the streets and roadways, we find that the public interest in a properly conducted DUI roadblock containing appro-*

*priate safeguards outweighs the individual's right to be free from unfettered intrusion upon his Fourth Amendment rights. The initial stop of the defendant in this case was under conditions which at least met the minimum requirements for a constitutional momentary seizure and, based upon obvious evidence of DUI, the resultant search and seizure in this case was not unreasonable under the Fourth Amendment or the Kansas Bill of Rights."* (Emphasis added.) 234 Kan. at 541-42.

We emphasize that the stops approved in *Deskins* were without any basis whatsoever for suspecting that the vehicles were involved either in criminal activity or in any activity presenting a clear public danger.

The exceptions to the rule that an individual or vehicle cannot be stopped without specific and articulable suspicion that a crime is being committed are constantly expanding. In *State v. Moore,* 237 Kan. 523, 701 P.2d 684 (1985), and *State v. Williams,* 8 Kan. App. 2d 14, 648 P.2d 1156 (1982), the random stopping and weighing of motor carriers was approved by Kansas appellate courts.

It is clear from the decisions reviewed that the Fourth Amendment is applied somewhat differently where the automobile in its mobile state is involved. It is also clear that the balancing test must consider the risk to the public of not making an immediate stop against the right of an individual to be free from such stops. We believe that, where the danger to the public is clear, urgent, and immediate, the equation must be weighted in favor of protecting the public and removing the danger.

Our Supreme Court in *Deskins* talks about the balancing test between the degree of governmental interest in public safety and the right of the individual to be secure from search and seizure. We must apply that balancing test in the instant case. A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. An investigatory or safety stop of a suspected drunken driver is a minimal intrusion upon that driver's freedom of movement and privacy.

We view the question of whether an anonymous tip can provide a sufficient basis to stop a vehicle in the light of the danger a drunken driver poses to the public. That danger is part of the

"totality of circumstances" from which we must decide this issue. See *State v. Field*, 252 Kan. 657, 660, 847 P.2d 1280 (1993).

It would be wrong to conclude that an anonymous tip can never provide the basis for an investigatory or safety stop of an automobile. We conclude that an anonymous tip may provide sufficient indications of reliability to support police action. Once again, it is important to note the context in which we make this decision. This is not a search warrant case, and it is not a probable cause to arrest case. The question is whether an anonymous tip, under the totality of the circumstances shown, may provide a reasonable basis for a *Terry* or safety stop. In that context, we hold that an anonymous tip can provide such a basis when considered in the "totality of circumstances" leading to the stop in question. In *United States v. McBride*, 801 F.2d 1045, 1046-47 (8th Cir. 1986), *cert. denied* 479 U.S. 1100 (1987), the Eighth Circuit Court of Appeals said:

"The parties do not dispute that the police officers' initial halting of the Volkswagen constituted only an investigatory stop, [citation omitted], permissible under the fourth amendment on a 'reasonable suspicion, based on specific and articulable facts, that [the vehicle's] occupants [were] or [had] been involved in criminal activity.' [Citation omitted.] Such reasonable suspicion, like the probable cause necessary for an arrest, may be based on a tip from an informer, *see Adams*, 407 U.S. at 147, 92 S. Ct. 1923-24; and although we have held in a slightly different context that '[a]n anonymous tip requires some measure of corroboration to warrant official action,' *Smothers v. Gibson*, 778 F.2d 470, 473 (8th Cir. 1985). . . . , the degree of reliability that must be shown is less when police action need be justified only by reasonable suspicion rather than by probable cause. [Citation omitted.] In view of the Supreme Court's holding in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983), that probable cause may exist in cases involving anonymous informants based on the 'totality of the circumstances,' we cannot agree that an anonymous tip alone can never support a reasonable, articulable suspicion of criminal activity. [Citations omitted.] Thus, we consider the anonymous tip before us on its own merits to see whether it bore indicia of reliability sufficient to support the given police action. [Citations omitted.]

"We note first that the anonymous caller's tip suggested some basis for firsthand knowledge, [citation omitted], in that it placed the suspect at the caller's house. In addition, the caller knew where the suspect was headed. These details indicate that the caller had some contact with the suspect through which the caller consistently could have known personal facts about the suspect, such as the suspect's involvement in crime.

"In addition, the caller's information was corroborated in two respects. The dispatcher verified that Illinois license plates so numbered did exist and were assigned to a small silver foreign car, and the officers observed the described vehicle in the designated neighborhood. As we have made clear even in cases involving the higher degree of reliability needed to establish probable cause, it is immaterial that the details corroborating an informant's tip are as consistent with innocent conduct as with illegal activity. [Citation omitted.] Courts have recognized that persons through malice might fabricate tips and meet this test for corroboration by adding neutral information such as location or vehicle description, *see United States v. McClinnhan*, 660 F.2d 500, 502 (D.C. Cir. 1981); but those courts have also recognized that the choice for police is between making limited investigatory stops and ignoring citizen tips."

In this case, the anonymous caller's tip suggests the basis for firsthand knowledge. The caller identified the vehicle and identified the driver as a white male. The caller also identified the highway being traveled by the red pickup. All of these facts from the anonymous caller were corroborated by the police before the stop was made. This is certainly one of those cases in which the police had the choice of either making the stop or ignoring the tip. The risk of ignoring the tip was that of death and destruction on the highways. This is not a risk which the Fourth Amendment requires the public to take.

Finally, we consider the contents of the tip and the risk to the public occasioned by less than immediate steps to verify the tip. This is an important factor in balancing the equation. We think it not unreasonable to conclude that the greater and more immediate the risk to the public revealed by the tip, the less importance we will accord to the process of corroboration or verification of the tip. Indeed, an anonymous tip may provide the basis for a stop in a case of this nature where the public danger is high and immediate but not provide that basis where the elements of great and immediate public risk do not exist.

The decision of the Tennessee Supreme Court in *State v. Pully*, 863 S.W.2d 29 (Tenn. 1993), supports our reasoning. In that case, an anonymous tip was made indicating that an individual in a certain vehicle had a shotgun and was "supposed to shoot someone." Acting on this tip, the police stopped the vehicle to investigate and ultimately arrested the armed driver. In upholding the stop as legal, the court said:

"In general, although the Fourth Amendment requires 'probable cause' before an arrest is deemed to be reasonable, the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy. *See, e.g., Brown v. Texas,* 443 U.S. 47, 50, 99 S. Ct. 2637, 2640, 61 L. Ed. 2d 357 (1979)." 863 S.W.2d at 30.

Later, the court commented:

"In this case, although the investigating officer could have assumed that the informant was an eye-witness, the credibility of the informant was largely unknown. The corroboration of several of the details of the reports, such as the identity of the driver, the description of the car, and the general location of the incident, supported the informant's credibility. The tip was not fully corroborated, however, because the defendant was not in the trailer park when Officer McKissack arrived. Under many circumstances, therefore, the officer would lack a reasonable suspicion that criminal activity was afoot.

"But, reliability of the informant's tip is not the only determinant of the reasonableness of the stop. The content of the tip is also a crucial factor and, in particular, the level of danger that the tip reveals. In *Alabama v. White,* 496 U.S. at 330, 110 S. Ct. at 2416, the United States Supreme Court stated that

'reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its reliability. Both factors—quality and quantity are considered. . . .'

In *Adams,* refusing to issue a general rule on the reasonableness of a stop, the Court emphasized that

'[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.'

*Id.,* 407 U.S. at 147, 92 S. Ct. at 1924. Although members of the *Adams* Court disputed the appropriate point of police intervention based on informants' tips, they agreed on the need for immediate police action in response to serious threats of harm. For example, while dissenting Justices Douglas, Marshall, and Brennan voiced their concerns with stopping suspects for 'possessory offenses,' Justice Brennan insisted that *Terry* 'was meant for the serious cases of imminent danger or of harm recently perpetrated.' *Id.* at 151-3, 92 S. Ct. at 1926-27. The whole Court thus recognized that the seriousness of the criminal threat is an important factor in determining the reasonableness of a police response and the reliability required of an informant's tip." 863 S.W.2d at 32-33.

Finally, the court held:

"In this case, the public interest served by the stop was the prevention of violent crime. The scope of the intrusion was minor; it was intended to be only a temporary stop of the defendant's car. Finally, the 'indicia of reliability' were sufficient in light of these other considerations to warrant a brief investigatory stop. The timely nature of the report indicated an eye-witness basis of knowledge, and the corroboration of many of the informant's details, although not all, provided some basis to believe that the informant was credible. *Although the reliability of the tip would certainly not establish probable cause to search or arrest, and would not furnish reasonable suspicion to stop the defendant in all circumstances, we conclude that, given the threat of violence, the police had 'specific and articulable facts' to warrant the investigatory stop in this case.*" (Emphasis added.) 863 S.W.2d at 34.

See *Henighan v. United States*, 433 A.2d 1059, 1064 (D.C. 1981); *State v. Kuahuia*, 62 Hawaii 464, 465-66, 616 P.2d 1374 (1980); *People v. Smithers*, 83 Ill. 2d 430, 437-38, 415 N.E.2d 327 (1980).

We agree with the rationale in *Pully* and the other cases cited above. We hold that, in this case, considering the high degree of danger to the public, the anonymous tip did provide "specific and articulable facts" to warrant the safety stop of the defendant's vehicle. The "totality" of circumstances tips the balance in favor of public safety and lessens the otherwise strict requirements of reliability and corroboration usually applied to an anonymous tip.

Our decision should be considered carefully within its context. The risk of danger presented to the public by a drunken driver is so great that we cannot afford to impose strict, verifiable conditions on an anonymous tip before an investigatory stop can be made in response to such a tip. To require time-consuming verification of the tip in all aspects might well result in the death of an innocent user of our highways. We do not believe that the Fourth Amendment requires the public to accept such risk, and we decline to impose that risk upon the public. The limited intrusion on time and freedom of travel occasioned by a "safety stop" is minimal. The risk to the public if the tip is accurate is extremely high. The balance requires that a safety stop of the nature involved in this action be approved. However, we caution that the same type of tip may not be sufficient where the risk to the public is not urgent and the time exists to verify all aspects of the tip, including the caller's reliability. Reliance on this de-

cision to justify the use of an anonymous tip under other circumstances would be unwise, and we strongly discourage any attempt to expand this decision beyond the perimeters indicated.

Affirmed.

GREEN, J.; dissenting: The majority states that the police officer did not violate the defendant's Fourth Amendment right against illegal seizures when he stopped the defendant, because such a stop is permissible under *State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992).

In *Vistuba*, our Kansas Supreme Court recognized the public safety stop, which justified the stopping of a vehicle even though there was no reasonable suspicion of any criminal activity by the driver. The court stated: "Safety reasons alone may justify the stop, *if the safety reasons are based upon specific and articulable facts.*" 251 Kan. at 824.

In *Vistuba*, the officer observed a driver weaving his vehicle on and off the road. The officer testified she pulled the driver over because she was afraid the driver might be falling asleep, although she had no reasonable suspicion of any criminal activity. This case, however, is distinguishable from *Vistuba*. Here, Officer Evans did not observe the defendant's alleged erratic driving before stopping him. Moreover, Evans testified the only reason he stopped the defendant was because of the anonymous tip information he received from his dispatcher.

Furthermore, although no criminal activity was suspected in *Vistuba*, criminal activity was clearly suspected in this case. For instance, the dispatcher told Evans that the defendant was driving erratically and was possibly intoxicated. In *State v. Fields*, 252 Kan. 657, 662, 847 P.2d 1280 (1992), the court distinguished *Vistuba* by stating:

"In *Vistuba*, the officer testified she did not suspect any criminal activity, while in the present case, Officer Bunger suspected the driver of the pickup was driving while under the influence of alcohol or drugs, a crime. The issue here is whether such suspicion was reasonable under the facts of this case."

Like *Fields*, the issue here is whether the anonymous tip furnished Evans reasonable suspicion to justify his stop of the defendant. Reasonable suspicion is dependent on both the content

of information possessed by police and its degree of reliability. Both quantity and quality of the information are considered in the totality of circumstances that must be taken into account when evaluating whether there is reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990).

The majority cites *State v. Pully*, 863 S.W.2d 29 (Tenn. 1993), for the proposition that a threat of a violent crime may, under certain circumstances, make an anonymous tip, otherwise lacking in sufficient indicia of reliability, sufficient to justify an investigatory stop. Although I do not entirely disagree with the proposition set forth in *Pully*, the facts in this case are distinguishable from the facts in *Pully*. For instance, the police officer in *Pully* received two urgent anonymous reports that Pully was driving a yellow Ford LTD in a certain trailer park, that he was armed with a shotgun, and that he was "supposed to shoot someone." 863 S.W.2d at 29-30. In addition, the investigating officer responding to the reports knew Pully. Unlike *Pully*, the officer in our case did not know the defendant. There was also no report that the defendant was armed with a dangerous weapon. Although a car can be a dangerous weapon under certain circumstances, a car is not considered inherently dangerous as is a shotgun or firearm. Finally, there was no report that the defendant had threatened anybody.

In *Pully*, after applying the *White* analysis to reliability of the tip, the court conceded, absent the threat of a violent crime, the tip would not furnish reasonable suspicion to stop Pully in all circumstances. Clearly, because the tip here failed to establish the threat of a violent crime, the tip could not furnish reasonable suspicion to stop the defendant.

Applying the *White* analysis to the facts of this case, the information furnished by the caller failed to show any inside information or familiarity with the defendant's affairs. For instance, the caller reported that a white male, who was driving a 1960's model red Ford pickup southbound on K-61 from Inman, was running other drivers. off the road. I venture to say that it would not be all that unusual for a person to see a white male driving a 1960's model red Ford pickup southbound on K-61 from Inman. Moreover, this description lacked any distinguishing character-

istics of the pickup, such as a license number or a dent. See *United States v. Jones*, 998 F.2d 883 (10th Cir. 1993).

Finally, Evans made no effort to fully corroborate the tip before deciding to stop the defendant. In fact, Evans testified that he stopped the defendant's pickup not because he observed any erratic driving or unlawful behavior, but only because of the anonymous tip call made to the dispatcher. Because the anonymous tip did not exhibit sufficient indicia of reliability to justify the investigatory stop of the defendant's pickup, I would reverse the trial court and remand with directions that the evidence obtained from the defendant as a result of the investigatory stop be suppressed.