GILBERTSON, Chief Justice
[¶1.] Steven Alexander Stanage appeals from a final judgment of conviction for driving under the influence. Stanage argues the circuit court erred in denying his motion to suppress evidence obtained during a traffic stop and subsequent blood draw. According to Stanage, the arresting officer lacked a reasonable basis to conclude Stanage had committed a crime. We reverse.
Facts and Procedural History
[¶2.] Shortly before 2 a.m. on October 26, 2014, in Brookings, South Dakota, Stanage ordered food at the drive-up window of a Hardee’s restaurant. Adam Hill, an employee working at the window, noticed Stanage’s eyes were bloodshot and his speech slurred. Stanage also had some difficulty grasping the beverage he had ordered. Hill reported his observations to James Debough, his shift supervisor. De-bough, in turn, contacted the police and told a dispatcher that a potentially drunk driver was parked at the window. Debough described Stanage’s vehicle as a “car” and gave its license-plate number but did not relay Hill’s observations regarding Stan-age’s eyes, speech, and motor control. De-bough told the dispatcher the employees had delayed Stanage’s order to stall his departure.
[¶3.] The dispatcher contacted Brook-ings County Sheriffs Deputy Jeremy Kriese, who was only one block away from the Hardee’s. The dispatcher gave Deputy Kriese the license-plate number and told him that Hardee’s employees were holding Stanage at the drive-up window, but the dispatcher did not provide any additional information regarding the informants’ identities to Deputy Kriese. At Deputy Kriese’s request, the Hardee’s employees “released” Stanage. After Stanage drove away from Hardee’s, Deputy Kriese immediately initiated a traffic stop. Deputy Kriese did not independently observe any suspicious behavior—the stop was predicated entirely on the information provided by the dispatcher. Deputy Kriese approached the vehicle and detected an overwhelming odor of alcohol emanating from it. Deputy Kriese administered field sobriety tests and based on the results, arrested Stanage for driving under the influence. Stanage submitted to a blood draw, and an analysis of his blood revealed a blood alcohol content of 0.204% at approximately 2:28 a.m.
[¶4.] Stanage was charged with driving a vehicle while under the influence of alcohol as a first offense. The case was first tried in magistrate court. Stanage moved to suppress all evidence resulting from the stop, including the results of the blood test. At the suppression hearing, Hill testified about the observations he made on October 26—i.e., Stanage’s bloodshot eyes, *525 slurred speech, and motor-control difficulty. The court denied Stanage’s motion and convicted him of driving while under the influence. Stanage appealed the magistrate court’s decision to the circuit court, which affirmed.
[¶5.] Stanage appeals, raising one issue: Whether Deputy Kriese had reasonable suspicion to justify the traffic stop.
Standard of Review
[¶6.] “[W]e review a motion to suppress evidence obtained in the absence of a warrant de novo.” State v. Walter, 2015 S.D. 37, ¶ 6, 864 N.W.2d 779, 782 (citation omitted). “[W]e review the circuit court’s factual findings for clear error but ‘give no deference to the circuit court’s conclusions of law.’ ” Id. (quoting Gartner v. Temple, 2014 S.D. 74, ¶ 8, 855 N.W.2d 846, 850).
Analysis and Decision
[¶7.] The Fourth Amendment protects a person from “unreasonable searches and seizures[.]” U.S. Const, amend. IV. This protection generally requires “that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure[.]” Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). However, “[t]he Fourth Amendment permits brief investigative stops ... when a law enforcement officer has ‘a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” Navarette v. California, — U.S. -, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The totality of the circumstances determines whether such a particularized and objective basis exists. Id. “Although a mere ‘hunch’ does not create reasonable suspicion, the level of suspicion the standard requires is ‘considerably less than proof of wrongdoing by a preponderance of the evidence,’ and ‘obviously less’ than is necessary for probable cause.” Id. (citation omitted) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)).
[¶8.] The information known to Deputy Kriese at the time of the stop was limited. Although Hill had observed that Stanage’s eyes were bloodshot, his speech was slurred, and his motor skills were impaired, this information was not known to law enforcement at the time of the stop. Therefore, Hill’s observations may not be considered in determining whether Deputy Kriese had a particularized and objective basis for suspecting Stanage was intoxicated. See Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000) (“The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.” (emphasis added)).[1] Additionally, the State concedes that Deputy Kriese did not independently observe any criminal activity or erratic driving on Stanage’s part.[2] Thus, the stop was predicated entirely on *526 the conclusory assertion of unidentified-but-identifiable informants and a positive identification of Stanage’s vehicle.
[¶9.] The initial question in cases like this is whether the tip is credible. Navarette, — U.S. -, 134 S.Ct. at 1688. The State contends that a finding of reasonable suspicion is supported because the informants were identifiable. Stanage contends that “[t]he call to Brookings dispatch that Deputy Kriese relied on was an anonymous tip.” The credibility of an informant is enhanced when the informant places his anonymity at risk. See id. at -, 134 S.Ct. at 1689-90. While “an unnamed individual who divulges enough distinguishing characteristics to limit his possible identity to only a handful of people may be nameless, ... he is capable of being identified and thus is not anonymous.” United States v. Sanchez, 519 F.3d 1208, 1213 (10th Cir. 2008) (quoting United States v. Brown, 496 F.3d 1070, 1075 (10th Cir. 2007)); accord State v. Mohr, 2013 S.D. 94, ¶ 20, 841 N.W.2d 440, 446; see also Navarette, — U.S. -, 134 S.Ct. at 1689-90 (considering law enforcement’s ability to identify 911 caller as bolstering credibility of an unidentified informant). Although Deputy Kriese did not know the specific identities of the informants at the time of the stop, he did know they were Hardee’s employees working at the time of the stop. Thus, for purposes of credibility, the informants in this case were not anonymous, which enhances the reliability of the tip.
[¶10.] Regardless, “[e]ven a reliable tip will justify an investigative stop only if it creates reasonable suspicion that ‘criminal activity may be afoot.’ ” Navar-ette, — U.S. -, 134 S.Ct. at 1690 (quoting Terry, 392 U.S. at 30, 88 S.Ct. at 1884); accord J.L., 529 U.S. at 272, 120 S.Ct. at 1379. The requirement that an officer have reasonable suspicion prior to a stop is not abrogated simply because a third-party informant is convinced a crime occurred. As noted above, an officer’s “mere ‘hunch’ does not create reasonable suspicion[.]” Navarette, — U.S. -, 134 S.Ct. at 1687. “[N]either does a private citizen’s.” United States v. Wheat, 278 F.3d 722, 732 (8th Cir. 2001). Even if an informant is credible, “[sjufficient information must be presented to the [officer] to allow that official to determine [reasonable suspicion]; his action cannot be a mere ratification of the bare conclusions of others.” Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983) (emphasis added).[3]
[¶11.] When an officer is not given an “explicit and detailed description of alleged wrongdoing,” Navarette, — U.S. -, 134 S.Ct. at 1689, the officer must have some other reason to believe the informant’s conclusion is correct,
If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of [reasonable suspicion] based on his tip.
Gates, 462 U.S. at 233, 103 S.Ct. at 2329-30; see also Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (upholding conclusory tip from known informant who had previously given *527 accurate information). Even if an informant has not previously provided information to the officer, the officer’s ratification of the informant’s conclusion may be objectively reasonable if the officer is aware that the informant has special training or experience relating to the conclusion at issue.[4] In this case, however, the record does not reflect that the informants had previously demonstrated unusual reliability in identifying intoxicated drivers. Even if they had, Deputy Kriese was unaware of the informants’ identities at the time he stopped Stanage, so such a circumstance— even if reality—could not possibly have informed Deputy Kriese’s reasonable-suspicion determination.[5]
[¶12.] Even so, the State contends it was reasonable to ratify the informants’ conclusion because Deputy Kriese confirmed the identifying detail provided by the informants—i.e., the license-plate number. However, the United States Supreme Court has specifically rejected the notion that identifying details like this can corroborate an allegation of criminal activity.
An accurate description of a subject’s readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.
J.L., 529 U.S. at 272, 120 S.Ct. at 1379 (emphasis added). Stanage does not dispute that Deputy Kriese had sufficient information to identify Stanage’s vehicle. But the tip in this case consisted only of “easily obtained facts and conditions existing at the time of the tip[;]” it does not suggest the informants had “reliable information of [Stanage’s] alleged illegal activities.” Gates, 462 U.S. at 245, 103 S.Ct. at 2335-36. Thus, under J.L., while the identifying detail provided to Deputy Kriese makes the tip more reliable in the sense that it positively identified Stanage’s vehicle, that detail does not support the conclusion that Stanage was engaged in illegal activity.
[¶13.] A number of Fourth Amendment decisions suggest that under these circumstances, Deputy Kriese did not have a particularized and objective basis for suspecting Stanage was intoxicated. In Na-varette, the Supreme Court reviewed a tip from an unidentified 911 caller. The tip, as relayed to an officer, said: “Showing southbound Highway 1 at mile marker 88, Silver Ford 150 pickup. Plate of 8-David-94925. Ran the reporting party off the roadway and was last seen approximately five minutes ago.” Navarette, — U.S. -, 134 S.Ct. at 1686-87. California Highway Patrol officers located the described vehicle and initiated a traffic stop based solely on the tip. Id. at -, 134 S.Ct. at 1687. The Supreme Court acknowledged that it was a *528 “close case.” Id. at -, 134 S.Ct. at 1692. Even so, the Court upheld the stop because the informant was identifiable and “reported more than a minor traffic infraction and more than a conclusory allegation of drunk or reckless driving. Instead, she alleged a specific and dangerous result of the driver’s conduct: running another car off the highway.”Id. at -, 134 S.Ct. at 1691 (emphasis added). ÍJnlike Navar-ette, the tip in the present case reported merely a conclusory allegation of drunk or reckless driving. Considering that the United States Supreme Court identified Navarette as a close case, the absence of one of the major factors relied on by the Supreme Court in reaching its decision strongly suggests the present case falls short of reasonable suspicion.[6]
[¶14.] A ease with facts analogous to Navarette is -State v. Scholl, 2004 S.D. 85, 684 N.W.2d 83. In that case, an unidentified-but-identifiable informant reported a possibly drunk driver. Id. ¶ 2, 684 N.W.2d at 84. Like Navarette but unlike the present case, the tip included an explicit description of the alleged offender’s behavior. The informant reported “seeing the driver ‘leaving [a] bar stumbling pretty badly and having problems getting into his ... pickup.’ ” Id. The informant also provided information sufficient for law enforcement to correctly identify the vehicle. Id. A police officer stopped the vehicle based solely on the tip. Id. ¶ 3, 684 N.W.2d at 84. As the Supreme Court did in Navarette, we upheld the stop in Scholl because the informant “describe[d] non-driving conduct that yielded a reasonable suspicion that the driver was driving while under the influence of alcohol.” Scholl, 2004 S.D. 85, ¶ 17, 684 N.W.2d at 89. Unlike the present case, “[t]he tipster provided the basis of his information and suspicion, i.e., personal observation of the driver stumbling badly from a bar and having trouble getting into his vehicle.” Id.
[¶15.] In upholding the stop at issue in Scholl, we examined similar cases from other jurisdictions. '
In State v. Miller, 510 N.W.2d 638 (N.D. 1994), the North Dakota Supreme Court invalidated a traffic stop based upon an informant’s report of a possible drunk driver who could “barely hold his head up” in the drive-up lane of a fast food restaurant. In Stewart v. State, 22 S.W.3d 646 (Tex. Ct. App. 2000), the Texas Court of Appeals invalidated a stop based upon an informant’s report of an intoxicated driver at a convenience store who fell down twice while getting into his vehicle....
.,. We perceive a distinction between observations at a fast food restaurant such as in Miller, supra[,] or at convenience store as in Stewart, supraQ and observations at a bar where the likelihood of alcohol consumption is obviously enhanced. It requires no leap of logic or common sense to deduce that a per *529 son stumbling from a bar late in the evening and exhibiting difficulty getting into his vehicle may well be under the influence of alcohol and incapable of safely operating the vehicle....
Scholl, 2004 S.D. 85, ¶¶ 13-14, 684 N.W.2d at 88 (emphasis added). We explicitly stated: “Moreover, we find it important in cases of this nature that the basis of the tipster’s knowledge or suspicion be communicated to law enforcement.” Id. ¶ 14, 684 N.W.2d at 88. Unlike Navarette, Scholl, Miller, and Stewart, the basis of the informants’ conclusion in this case was not communicated to Deputy Kriese. Additionally, unlike Scholl, the location at issue in this case was a fast-food restaurant and not a bar.
[¶16.] Our decisions involving conclusory tips also support the conclusion that Deputy Kriese did not have a reasonable suspicion of criminal activity. In State v. Burkett, 2014 S.D. 38, 849 N.W.2d 624, an unidentified-but-identifiable informant contacted law enforcement to report a possibly intoxicated driver. As in the present case, the tipster relayed identifying information of the alleged offender. We noted that the tip was “minimal, almost conclu-sory in naturef.]” Id. ¶ 56, 849 N.W.2d at 638. However, unlike the present case, the officer independently observed the alleged offender stop his vehicle “in the middle of a residential street and rev[] its engine for no apparent reason.” Id. ¶ 8, 849 N.W.2d at 626. Thus, although “the information conveyed to [the officer] was less in quantity than that in Scholl,” Burkett, 2014 S.D. 38, ¶ 55, 849 N.W.2d at 638, “[u]nder the totality of the circumstances, the officer’s corroboration of the tip by ‘a brief observation of erratic driving’ compensated for an otherwise anemic tip[,]” Walter, 2015 S.D. 37, ¶ 11, 864 N.W.2d at 785 (citation omitted) (quoting Burkett, 2014 S.D. 38, ¶ 56, 849 N.W.2d at 638).
[¶17.] In Mohr, we reviewed the investigative stop of an alleged offender after a casino attendant—who was unidentified but identifiable—triggered a duress alarm. The only other information known to the responding officers was that “the casino attendant believed the suspect from earlier robberies was in the casino, that Mohr was wearing a hat and sunglasses, and that Mohr was playing video lottery when officers arrived.” Mohr, 2013 S.D. 94, ¶ 15, 841 N.W.2d at 445. We recognized that the informant “did not relay any artic-ulable facts of her firsthand observation of a crime in progress” and that “viewed in isolation, [the tip] might lack the factual basis for police to have a reasonable suspicion of criminal activity.” Id. ¶ 22, 841 N.W.2d at 447. “[W]e upheld the detention and search because the officers were familiar with the circumstances of the prior robberies, the attendant was an identifiable source, and the nature of an emergency call limited the ability of the officers to investigate.” Walter, 2015 S.D. 37, ¶ 12, 864 N.W.2d at 785 (discussing Mohr, 2013 S.D. 94, ¶¶ 18-23, 841 N.W.2d at 445-47).[7] *530 Aside from the ability to identify the informants, none of these other factors are present in Stanage’s case.
[¶18.] In each of the foregoing decisions, the stop at issue was upheld either because of independent observation by law-enforcement officers or because the tip itself demonstrated the informant’s basis of knowledge for alleging criminal conduct. In this case, the report Deputy Kriese received “did not articulate any facts describing illegal conduct or any conduct that would otherwise give rise to an inference of criminal activity. [Deputy Kriese] did not corroborate the report’s conclusory assertion by personal observation of [Stanage].” Id. ¶ 13, 864 N.W.2d at 785 (emphasis added). Thus, under Navarette, Scholl, and the other authorities discussed above, the totality of the circumstances in this case did not provide a reasonable suspicion of criminal activity.[8]
Conclusion
[¶19.] Deputy Kriese did not have sufficient information regarding Stanage’s behavior to form his own conclusion that Stanage was intoxicated. Neither did Deputy Kriese have a particularized and objective basis to ratify the informants’ conclusion that Stanage was intoxicated. Under *531 Navarette, a conclusory allegation of drunk or reckless driving is insufficient to support a reasonable suspicion of criminal activity. Therefore, Deputy Kriese did not have a reasonable suspicion of criminal activity, and any evidence resulting from the stop was the product of an illegal search. The circuit court erred in denying Stanage’s motion to suppress.
[¶20.] We reverse.
[¶21.] ZINTER, SEVERSON, and WILBUR, Justices, concur.
[¶22.] KERN, Justice, dissents.

. The dissent argues that it was reasonable for Deputy Kriese to "infer” a factual premise for the informants’ conclusion that Stanage was intoxicated. See infra ¶ 30. But a conclusion is inferred from a factual premise, not the other way around. See Black’s Law Dictionary (10th ed. 2014) (defining inference as a "conclusion reached by considering other facts and deducing a logical consequence from them." (emphasis added)). While an officer may make rational inferences from known facts, Terry, 392 U.S. at 21, 88 S.Ct. at 1880, he may not simply assume an informant’s conclusion is correct, see infra ¶ 10 & n.3.

. Independent observation is not required to form a particularized and objective basis for suspecting criminal activity, but it can compensate for an insufficient tip. See Navarette, — U.S. -, 134 S.Ct. at 1688.

. Gates addresses the related context of a magistrate's probable-cause determination. The reasoning is equally applicable to an officer's reasonable-suspicion determination. While the burden of proof is less in the reasonable-suspicion context, in either case the burden of determining whether reasonable suspicion (or probable cause) exists belongs to the magistrate or officer and not to some third party.

. For example, a veteran law-enforcement officer, emergency-room physician, or bartender might identify intoxication more reliably than the average person.

. The dissent primarily focuses on the credibility of the informants in this case. As noted above, we agree the informants were credible. Supra ¶ 9. However, the basis of knowledge of even an "unquestionably honest citizen” is subject to some scrutiny. See Gates, 462 U.S. at 233-34, 103 S.Ct at 2330 ("[RJigorous scrutiny of the basis of [an unquestionably honest citizen’s] knowledge [is] unnecessary.” (emphasis added)). In other words, the question in this case is not whether Deputy Kriese had reason to believe the informants were telling the truth: the question is whether he had reason to believe they correctly concluded criminal activity was occurring.

. The dissent claims "the particular circumstances of Navarette distinguish it from the present facts.” Infra ¶ 26. There is no basis for such a claim. In Navarette, the Supreme Court considered that the informant’s use of the 911 system enabled law enforcement to identify the informant. - U.S. -, 134 S.Ct. at 1689-90. Thus, in Navarette, the informant was unidentified but identifiable. In the present case, the informants were also unidentified but identifiable. As explained above, an informant that is identifiable is not anonymous. Sanchez, 519 F.3d at 1213; accord Mohr, 2013 S.D. 94, ¶ 20, 841 N.W.2d at 446; see also Navarette, — U.S. -, 134 S.Ct. at 1689-90. So contrary to the dissent’s claim, the present case is identical to Navarette in this regard.
Regardless, the dissent’s argument misses the mark. We agree that the informants in this case were credible. See supra ¶ 9. But the problem is the content of the tip, not its trustworthiness. See supra ¶ 10 & n.3.

. Relying on State v. Tucker, 19 Kan.App.2d 920, 878 P.2d 855 (1994), and State v. Rutzinski, 241 Wis.2d 729, 623 N.W.2d 516 (2001), the dissent argues that the protections of the Fourth Amendment apply with lesser force when law enforcement is confronted with the possibility of public danger. See infra ¶¶ 34-37. According to the dissent, “[t]he risk to the public in not immediately stopping the vehicle was ‘death and destruction on the highways. This is not a risk which the Fourth Amendment requires the public to take.’ ” Infra ¶ 35 (quoting Tucker, 878 P.2d at 862). Yet in Tucker, the anonymous tip actually "indicated that the defendant ... had been running other drivers off of the road.” Tucker, 878 P.2d at 858 (emphasis added). Likewise, the tip in Rutzin-ski actually alleged the defendant's vehicle was "weaving within its lane, varying its speed from too fast to too slow, and ‘tailgating.’ ” 623 N.W.2d at 519. Thus, the tips in Tucker and Rutzinski—like the tip in Navarette *530 but unlike the tip in the present case—involved more than a conclusory allegation of drunk or reckless driving. See supra ¶ 13.
Even if the dissent were able to cite a case in which a court upheld—out of concern for public safety—a stop based on a conclusory allegation of drunk driving, the United States Supreme Court squarely rejected such an argument in J.L. In that case, the State of Florida and the United States argued that “a tip alleging an illegal gun [should] justify a stop and frisk even if the accusation would fail standard pre-search reliability testing.” J.L., 529 U.S. at 272, 120 S.Ct. at 1379. After recognizing "the serious threat that armed criminals pose to public safetyU” the Supreme Court said:
Terry's rule, which permits protective police searches on the basis of reasonable suspicion rather than demanding that officers meet the higher standard of probable cause, responds to this very concern. But an automatic firearm exception to our established reliability analysis would rove too far. Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target’s unlawful carriage of a gun. Nor could one securely confine such an exception to allegations involving firearms. Several Courts of Appeals have held it per se foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well. If police officers may properly conduct Terry frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain, under the above-cited decisions that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indicia of reliability critical in Adams and White, the Fourth Amendment is not so easily satisfied.
Id. at 272-73, 120 S.Ct. at 1379-80. As indicated by the Supreme Court, Terry’s reasonable-suspicion standard already limits the individual protection of the Fourth Amendment by striking a balance between the need to protect the public and the need to protect the individual. The foregoing is equally applicable to the dissent's argument in this case. For the reasons expressed by the Supreme Court, we must also reject the dissent’s public-safety argument.
Finally, the Supreme Court did not rely on any sort of public-safety exception to the Fourth Amendment in its totality-of-the-circumstances analysis in Navarette. The dissent does not cite to any Supreme Court decisions on this point, let alone one decided after Navarette.

. As discussed above, even a conclusory allegation of criminal conduct can support a finding of reasonable suspicion under the right circumstances. See supra ¶ 11, To avoid situations like this, however, we encourage law-enforcement officers simply to ask for details when confronted with a tip like the one in this case. Had Hill’s observations been relayed to Deputy Kriese, the result of this case likely would be different.