No. 88,250

STATE OF KANSAS, *Appellant,* v. WILLIAM ALFRED CRAWFORD,
JR., *Appellee.*

67 P.3d 115

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 977, 52 P.3d 353 (2002).

Opinion filed April 18, 2003.

*Steven J. Obermeier,* assistant district attorney, argued the cause, *Vanessa M. Fowler,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the briefs for appellant.

*Patrick M. Lewis,* deputy district defender, of Olathe, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: This is an interlocutory appeal of a district court's order suppressing all evidence in a case concerning the defendant's third offense of driving under the influence of alcohol (DUI), a felony under K.S.A. 2000 Supp. 8-1567. The evidence had been obtained during a vehicle stop prompted by an anonymous tip. The Court of Appeals affirmed the district court's decision, and we granted the State's petition for review in accordance with K.S.A. 20-3018 (b).

The sole issue on appeal is whether the district court correctly ruled that the anonymous tip failed to provide an adequate basis to justify the stop and detention, requiring suppression of the evidence. More specifically, the question is whether a stop is legal when it is based upon an anonymous tip stating a vehicle's make, model, style, color, the state of origin of its license plate, highway location, and direction of travel — all of which was corroborated by the law enforcement officer before the stop — and also stating the conclusory allegation that the vehicle was being driven recklessly, which the officer did not attempt to corroborate before the stop. We hold the district court erred in holding the stop was illegal. We therefore reverse the district court and the Court of Appeals and remand for trial.

## FACTS

In the early afternoon of Friday, August 18, 2000, Johnson County Sheriff's Deputy Mark Leiker was on patrol south of the Kansas City metropolitan area, near Spring Hill, Kansas. At approximately 2 p.m., he received a call from Sheriff's dispatch. Deputy Leiker described the events that followed during a preliminary hearing held July 13, 2001.

[Leiker]: "Sheriff's dispatch called for a Spring Hill unit to respond to the area of approximately 207th, 215th and U.S. 169 reference a reckless driver.
[State]: "When you heard that call go out, what did you do?
[Leiker]: "I proceeded in that direction because I had heard Spring Hill's response that they did not have an officer available.
[State]: "And did you place yourself in a certain location based on that call?
[Leiker]: "Yes, I did. I parked my vehicle on the shoulder of the roadway at approximately 207th and 169 Highway.
[State]: "207th and 169 Highway, is that in Johnson County, Kansas?

[Leiker]: "Yes, it is.

[State]: "And while you were at this — first of all, about what time was this that you responded and put yourself in that location?

[Leiker]: "Approximately 1:2 — correction 1:45, two o'clock.

[State]: "And as you were at that location, did you observe anything?

[Leiker]: "Yes, I did. The vehicle that was described by Sheriff's dispatch passed me.

[State]: "And what was the description of the vehicle that was given to you prior to seeing it?

[Leiker]: "Okay. Dispatch advised and said it was a black Dodge pickup truck with Oklahoma plates on it.

[State]: "Did they indicate the direction of travel of the vehicle?

[Leiker]: "They said it was northbound.

[State]: "And the vehicle that passed you can you describe it?

[Leiker]: "It was a black Dodge Dakota pickup truck with Oklahoma plates on it.

[State]: "After it passed by you, what did you do?

[Leiker]: "As soon as it passed I activated my emergency equipment and made a traffic stop.

[State]: "Now, Deputy, why was it that you decided to stop the vehicle without following it for a distance?

[Leiker]: "Because the call came out as a reported reckless driver and the area of County Line and 169 Highway has a history of having, you know, bad accidents on it, and because, like I said, it was a reckless driving complaint I didn't think I should allow the driver to commit any more infractions if it was already reported that he did so.

[State]: "Now, this highway, is it a two-lane or four-lane highway?

[Leiker]: "It's four lanes.

[State]: "The only thing dividing south and northbound traffic is basically the dotted or middle lines, correct?

[Leiker]: "Correct."

Leiker was parked approximately 1 mile north of the county line, and the speed limit there was 65 miles per hour. He had stopped 2 minutes after receiving the dispatch and performed the vehicle stop 6 minutes later. On cross-examination, Leiker testified that the dispatcher had additionally described the truck model as a Dakota. However, he admitted that the dispatcher had not described the driver or indicated how many persons were in the truck, that he had not noticed the truck involved in any traffic violations during the 25 to 30 seconds he followed Crawford before the stop, and that the traffic had not been heavy.

Leiker testified that after the stop he noticed several signs indicating Crawford was intoxicated. Crawford exited his vehicle before being instructed to by Deputy Leiker and when told to return to the truck he swayed as he walked and was forced to hold onto the railing around the truck bed. When Leiker approached the truck, he noticed a faint odor of alcohol and that Crawford's eyes were bloodshot and his clothes were disheveled as if he had been sleeping. After Crawford failed three different field sobriety tests and the preliminary breath test, Leiker arrested him and conducted an Intoxilyzer 5000 examination. This test revealed Crawford possessed a blood alcohol content of .174%, more than twice the legal limit of .08% expressed in K.S.A. 2000 Supp. 8-1567.

At the close of the preliminary hearing, the district court bound Crawford over for trial on a single charge of felony driving under the influence of alcohol. K.S.A. 2000 Supp. 8-1567(f). Approximately 2 months later, the court conducted a hearing on Crawford's motion to suppress the evidence obtained after the stop and relied exclusively upon the transcript of the preliminary hearing. The district court essentially rejected the possibility of a safety stop under *State v. Vistuba,* 251 Kan. 821, 823, 840 P.2d 511 (1992), and evaluated the detention as an investigatory stop under the standards of *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and its progeny. In suppressing the evidence, the court held Leiker lacked the requisite reasonable suspicion to conduct the detention without having further corroborated the details of the anonymous tip.

The State timely appealed. After analyzing Leiker's actions as not only a possible investigatory stop under *Terry* but also a public safety stop under *Vistuba,* a divided Court of Appeals rejected both bases for the stop and affirmed the district court's decision.

## DISCUSSION

The State argues that the district court erred in suppressing the evidence because the anonymous tip justified Crawford's stop either under *Terry* for investigation purposes or under *Vistuba* for public safety. Our standard of review is stated in *State v. Alvidrez,* 271 Kan. 143, 145, 20 P.3d 1264 (2001):

"When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision ' "by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review." ' [Citations omitted.]"

We need not evaluate the safety stop possibility, as we hold the stop was legal as a *Terry* stop under the same rationale and comparable facts of *State v. Slater*, 267 Kan. 694, 986 P.2d 1038 (1999).

In *Slater*, a Hays police officer was on routine patrol in the city on February 15, 1997. After an anonymous caller's tip to dispatch, he was informed that a "possible drunk driver" was leaving Burger King in a black pickup bearing license tag HEK 477. Apparently by dispatch running the license plate, they were able to advise that the tag was registered to Walter Slater at 2212 Downing. Within minutes, the officer went to Burger King, did not see the vehicle, and proceeded to defendant's home address a short distance away. A block from the house, the officer observed the vehicle as described, followed it approximately one block without seeing any signs of poor driving, and stopped the vehicle to ascertain the information received from the dispatcher. As the driver got out, a beer can fell out of the pickup and the driver stumbled and staggered. 267 Kan. at 696.

Slater was arrested and charged with DUI. The trial court, however, suppressed the evidence arising out of the stop and dismissed the charge, holding that the anonymous tip was insufficient to provide an articulable and reasonable suspicion that a crime was being committed. See *Terry*, 392 U.S. 1 (a law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a crime), and *Terry's* Kansas codification at K.S.A. 22-2402(1).

We reversed, applying the "totality of the circumstances" test from *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), and *State v. Field*, 252 Kan. 657, Syl. ¶ 3, 847 P.2d 1280 (1993). Under that test, we held that the information given by the anonymous caller and the officer's corroboration of

the description and license number of the vehicle before the investigatory stop was sufficiently reliable to provide the officer with a reasonable suspicion of criminal activity. *Slater,* 267 Kan. at 706.

We observed that brief investigatory stops of motor vehicles based upon reasonable suspicion are substantially less intrusive than other forms of seizures under the Fourth Amendment and are perceived as relatively minimal intrusions upon the Fourth Amendment freedoms. 267 Kan. at 706 (citing *State v. Ramey,* 129 Ohio App. 3d 409, 717 N.E.2d 1153 [1998]). Accordingly, "[t]his minimal intrusion is balanced against the substantial harm caused by intoxicated drivers." 267 Kan. 706. We quoted with approval the Court of Appeals' decision in *State v. Tucker,* 19 Kan. App. 2d 920, 927, 878 P.2d 855 (1994):

"A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. An investigatory or safety stop of a suspected drunken driver is a minimal intrusion upon that driver's freedom of movement or privacy."

The touchstone of the *Terry* stop at issue in *Slater* and in the case of hand is reasonable suspicion of criminal activity. Consequently, we first need to determine whether the activity may be criminal. Just as the drunk driving alleged by the anonymous informant in *Slater* and which caused the officer to stop the vehicle without corroboration is a crime in Kansas (K.S.A. 2000 Supp. 8-1567), so is the reckless driving alleged by the anonymous informant in the case at hand and which caused the officer to stop the vehicle without corroboration. K.S.A. 8-1566(a) provides that "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." Except in cases of commercial vehicles, violation is a misdemeanor, with a first conviction of a violation punishable by sentencing to not less than 5 nor more than 90 days' imprisonment or fined not less than $25 nor more than $500, or both such fine and imprisonment.

Second, we need to examine the anonymous informant's tip and its place in the totality of circumstances in this case. Both lower courts applied the three-part test we established in *Slater* to ana-

lyze the tip's reliability and concluded Leiker lacked sufficient basis for an investigatory stop. That test is: (1) the type of tip or informant involved; (2) the detail given about the observed criminal activity; and (3) whether the police officer's personal observations corroborate the information supplied in the tip. 267 Kan. at 700. Neither court, however, examined the specific facts in *Slater* which are remarkably similar to the case at hand.

When we applied the three-part test to the tipster's facts in *Slater*, we concluded that the stop was legitimate based in large part upon those facts. When we apply the three-part test to the comparable facts in the case at hand — though the Court of Appeals did so and concluded the stop was not legitimate — we must conclude as a matter of law that the stop here was legitimate as well. See *Alvidrez*, 271 Kan. at 145 (When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard.). Here, the deputy was informed that a black Dodge Dakota pickup truck with Oklahoma plates was northbound on U.S. Highway 169 in the approximate area of 207th and 215th Streets and the truck was being driven recklessly. He parked on the shoulder of the highway at approximately 207th Street and corroborated all details of the tip except the reckless driving allegation, stopping the truck as soon as it passed him. When viewing *Slater*'s factors, "it is apparent that the informant observed the details personally instead of simply relying on information from a third party," and that the officer corroborated the informant's information by finding the "vehicle and the location as substantially described by the informant." 267 Kan. 702-03.

Moreover, although the tip included the conclusory allegation that the driver was "reckless" — which was not corroborated — this failure is not fatal to the stop according to *Slater*. There, the tipster made the conclusory allegation of a "possible drunk driver." We held that conclusions, *e.g.*, drunk driving, can justify a stop where other facts in the tip were corroborated by observation. See *Slater*, 267 Kan. at 704-05, and cases cited there. As stated by the court in *Kaysville City v. Mulcahy*, 943 P.2d 231, 237 (Utah App.

1997), and cited with approval in *Slater* at 705: " '[A]lthough conclusory, the informant's statement that the driver was intoxicated was "the kind of shorthand statement of fact that lay witnesses have always been permitted to testify to in court." ' "

While the facts in the case at hand are remarkably similar to the facts in *Slater*, they are virtually identical to those in *State v. Boyea*, 171 Vt. 401, 765 A.2d 862 (2000), *cert. denied* 533 U.S. 917 (2001) (cited with approval in *City of Pratt v. Stover*, 272 Kan. 279, 282, 32 P.2d 1143 [2001]).

In *Boyea*, at approximately 3 p.m. on July 18, 1998, a Vermont state trooper received a radio dispatch of a "blue-purple Volkswagen Jetta with New York plates, traveling south on I-89 in between Exits 10 and 11, operating erratically." 171 Vt. at 402. The officer, who was patrolling nearby, parked his cruiser in the median just north of Exit 10, to wait for the vehicle. Within 5 minutes, the officer spotted a purple Volkswagen Jetta with New York plates traveling south on I-89. The officer observed the vehicle turn off the interstate at Exit 10 and immediately pulled out to follow. The officer lost sight of the vehicle after it exited, but regained visual contact as it turned onto Route 2 and caught up with it shortly thereafter. The officer activated his blue lights, and the vehicle pulled over. Based upon his subsequent observations, the officer arrested defendant for DUI. The trial court denied a motion to suppress, and defendant entered a conditional plea of guilty to DUI, second offense. The dispatcher's information had come from an anonymous informant, and the trooper did not corroborate the conclusory allegations of "erratic driving" before the stop. 171 Vt. at 403.

The court held that "on the facts of this case, the officer's expeditious stop of the vehicle was based upon sufficiently reliable information, notwithstanding the absence of any personal observation of incriminating behavior by the driver." 171 Vt. at 402. The Vermont Supreme Court based its decision, among other things, upon "the vast majority of well reasoned decisions from other states," including *Slater*. 171 Vt. at 410. It upheld the trial court's denial of defendant's motion to suppress.

In summary, this court clearly established its position four years ago in *Slater*. We do not now retreat from that position in the case at hand.

ABBOTT, J., and GERNON, J., not participating.

LARSON, S.J., and WAHL, S.J., assigned■

ALLEGRUCCO, J., dissenting: I agree that *State v. Slater*, 267 Kan. 694, 986 P.2d 1038 (1999), controls this case. Notwithstanding, I respectfully dissent from the majority's holding that the officer had reasonable suspicion of criminal activity to make the stop. I remain convinced in that belief for the reasons set forth in the well-reasoned dissent by Lockett, J. in *Slater*. I add the following comments.

The majority perpetuates *Slater* to continue to approve vehicle stops based on the "totality of the circumstances." It has become the cure-all to remedy ailing vehicle stops made under the guise of either a "safety stop" or "*Terry* Stop." Here the majority, as did the majority in *Slater*, relied on *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), for the "totality of the circumstances test." There the Supreme Court said:

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' *United States v. Cortez*, 449 U.S. 411, 417 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The *Gates* Court applied its totality of the circumstances approach in this manner, taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work." 496 U.S. at 330.

This case involved drug violations and factually is very different from the present case. The controlling factor was the detail provided by the tipster predicting the defendant's future behavior,

"because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." 496 U.S. at 332.

The Supreme Court differentiated between easily obtained facts such as a vehicle description which existed at the time of the call and which could easily be obtained by anyone. Here, the tip provided only such information and was totally void of anything to conclude the tipster was honest, reliable, or that the tipster personally observed a criminal violation.

Here the majority, with nothing more than the statement that a driver was "driving recklessly," concludes that Crawford violated K.S.A. 8-1567. Further, such violation was corroborated based upon the officer finding a matching vehicle, and such match made it apparent the tipster personally observed the violation. Such easily obtained fact corroborated nothing more than Crawford was driving a black Dodge Dakota pickup with Oklahoma tags northbound on U.S. Highway 169. The bottom line is that the tip lacked any indicia of reliability or content that would support a "Terry Stop" of Crawford's vehicle. I suggest that the majority has lost sight of the court's responsibility to ensure that vehicle stops are carried out only in accordance with constitutional principle. In my view, the majority decision in Slater resulted from the use of blue smoke and mirrors and a retreat from that decision would be warranted. I would affirm the district court and the Court of Appeals.

LUCKERT, J., joins in the foregoing dissent.