NOT DESIGNATED FOR PUBLICATION

No. 116,634

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CATHERINE LYNN DEAVER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed November 3, 2017.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amanda J.M. Faber*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM: On June 16, 2013, an unidentified informant approached Kansas Highway Patrol Master Trooper Da'Von Brame at a service station and told the officer that "[t]here's a gal in a Texas car over here, and I think she's loaded beyond repair." The informant was concerned that the woman was driving while intoxicated and pointed Trooper Brame towards the appellant, Catherine Lynn Deaver. Trooper Brame approached Deaver and asked her if she was having any issues. The officer asked Deaver to step out of the car and asked her if she was on any drugs, alcohol, or medications. Deaver told Trooper Brame that she was only on medications. Trooper Brame then asked Deaver to show him her medications. Upon doing so, the officer noticed metal pinchers

1

and a metal screen with residue in an unlabeled prescription pill bottle. Trooper Brame identified the items as drug paraphernalia and told Deaver that he would have to search her car. Trooper Brame found a brass pipe with residue, used needles, and small bags with white crystal rocks.

Officers arrested Deaver, and the State charged her with possession of drugs and drug paraphernalia. Deaver sought a motion to suppress the evidence found in the car search, arguing that Trooper Brame did not have reasonable suspicion to conduct the search. The trial judge denied the motion and at a bench trial found Deaver guilty of possession of methamphetamine and drug paraphernalia. Deaver appeals the conviction on the basis that the district court erroneously denied her motion to suppress, specifically arguing that Trooper Brame lacked reasonable suspicion and his investigatory stop was illegal.

Deaver's argument is not persuasive. The district court correctly denied Deaver's motion, and the conviction is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

At 10:18 in the evening of June 16, 2013, Trooper Brame entered the Towanda service station as part of a routine patrol. As Trooper Brame entered the station parking lot, a man approached the officer's patrol car and told Brame that "[t]here's a gal in a Texas car over here, and I think she's loaded beyond repair." The man pointed Trooper Brame to the exact location of the woman. The exchange between the unidentified informant and Trooper Brame lasted for approximately 18 seconds and was recorded by the camera in the officer's patrol vehicle. Trooper Brame acknowledged the informant and told him that he would check on the situation.

2

The recording indicates Trooper Brame drove towards the gas station after the exchange ended, but there is a 15 to 20 second gap in the recording that resulted from a glitch in the recording system. Shortly after the device started recording again, Trooper Brame "red lighted" the driver, who responded by pulling into a parking space near the EZ Go convenience store that was located within the service station parking lot. Trooper Brame approached the car and advised the driver he pulled her over because "a couple of people advised [Trooper Brame] that [the driver] might have been having some issues, some medical issues, or something like that," and he wanted to check on her "and make sure everything [was] alright." After requesting the driver's information and insurance information, the officer requested that the driver step out of the car. Trooper Brame then identified the driver as Deaver.

While Deaver was standing outside the car, Trooper Brame asked her if she "had any drugs or any weapons anything like that" on her and if she drank alcohol, to which she responded "no." Trooper Brame also asked Deaver if she was on any medications. Deaver said that she was and gave Trooper Brame a list of the various medications that she took. After Deaver told Trooper Brame that she had her medications with her, he asked if she would show him her medications. While Deaver was telling Trooper Brame about each of her medications, he noticed something metal in one of the bottles. After asking Deaver to open the bottle, Trooper Brame identified metal pinchers and a metal screen with residue in the bottle. Trooper Brame recognized that these items were often used as drug paraphernalia and then warned Deaver that "now that he [had] this, he [had] to search the whole car."

Trooper Brame proceeded to search Deaver's car, which yielded a "brass pipe with black burnt residue in it in the driver's side door panel" and a "blue leather zip up bag filled with several used needles and small clear Ziploc bags filled with white crystal rocks." Deaver was arrested and charged with possession of drugs and drug

3

paraphernalia. Subsequent forensic testing indicated that the white crystal rocks were methamphetamine.

Prior to trial, Deaver filed a motion to suppress the evidence obtained as a result of the car stop. Deaver argued that Trooper Brame did not have "reasonable suspicion based on articulable facts for the initial stop, and any evidence discovered as a result of the stop [was] fruit of the poisonous tree, and should be suppressed." Trooper Brame testified at the preliminary hearing and at at the initial hearing on Deaver's motion to suppress. The trial judge granted a continuance at the initial suppression hearing, and Trooper Brame testified again at the subsequent hearing on the motion. Trooper Brame testified at both hearings that he observed Deaver before he stopped her.

At the preliminary hearing, Trooper Brame testified:

"When [Deaver] was at the fuel pumps she seemed a little confused. She was using her car kind of for balance and she'd walk from her front door of . . . her driver's side . . . to the fuel pump and to the back of the car, then she went back to the front of her car, and the whole time she was kind of using the car for a little bit of balance."

At the first hearing on Deaver's suppression motion, Trooper Brame testified:

"I seen her standing on the driver's side of her car. She was out standing outside the car. She was walking back and forth from her front door, . . . [to] the back of her car where the gas pump was. She walked back and forth . . . approximately two or three times, and she was walking very slow. She was using the car . . . for balance and she was walking really slow."

At that hearing the district court questioned Trooper Brame about the video of his encounters with the unidentified informant and Deaver. The trial judge granted a

4

continuance at the end of that hearing so the State could produce the video recording of Trooper Brame's encounter with Deaver.

At the second hearing on Deaver's motion to suppress, Deaver questioned Trooper Brame about the video recording device that captured both his encounter with the unidentified informant and his investigatory stop of Deaver. Trooper Brame's testimony at that hearing was consistent with the prior two testimonies regarding his observations of Deaver. Additionally, Deaver questioned the integrity of the video recording and the credibility of Trooper Brame's testimony at the subsequent hearing. Finally, Deaver questioned whether the information the officer gleaned from the informant's tip was sufficient for reasonable suspicion.

At the end of that hearing, the district court denied Deaver's motion to suppress. In its ruling, the district judge explained:

> "I think a reasonable person, a reasonable Law Enforcement Officer, would conclude by that . . . what the individual is telling him is that there's a potentially alcohol or drug impaired person over there filling up her car . . . .
> "I think the Officer is obligated basically to go check it out, which he did. The Officer testified that of his own observation he saw . . . her going back and forth between the gas pump and her car, up and down to the side of her car, and appeared to be using the side of the car for balance.
> "So that's what he had. He had his own observations of that. He had the tipster telling him that there was a person there loaded beyond repair, and he knew that she had gassed her car and was potentially getting ready to drive away.
> "So did he have reasonable suspicion of criminal activity? I believe he had reasonable suspicion that this individual was somehow impaired either by drugs or alcohol."

Lastly, the district court addressed the reliability of the informant's tip. The district court ruled the tip was reliable based on the following:

- The tip was made "almost immediately after the tipster made the observations."
- The informant personally observed Deaver's behavior.
- The informant "pointed toward the pump and pointed [Deaver's] car out."
- The informant personally approached Trooper Brame although "for all [the informant] knew the Officer was going to ask him to sit down and was going to take his name," and that "there would be some disincentive . . . for a person just to walk up and fabricate something like that to a Law Enforcement Officer."
- Trooper Brame corroborated the tip with his own observations.

The State and Deaver agreed to a bench trial and stipulated to the following facts:

"1.  On June 16, 2013, Kansas Highway Patrol Trooper Da'Von B. Brame encountered Deaver at the Towanda service area on the Kansas Turnpike in Butler County after receiving a report from a concerned citizen. The unidentified white male informed Trooper Brame that 'there's a gal in a Texas car over here and I think she's loaded beyond repair.' Ms. Deaver, who had been filling her car (which had Texas plates) with gasoline, parked outside the convenience store, which is where Trooper Brame made contact with her.

"2.  Trooper Brame asked for Ms. Deaver's driver's license and she produced a valid Texas license. Trooper Brame then asked Ms. Deaver if she was on medication, to which Ms. Deaver replied, according to Trooper Brame's affidavit, that 'she was taking blood cholesterol medication.' Trooper Brame asked Ms. Deaver if he could see her medication, and Ms. Deaver handed over a bag containing several pill bottles.

"3.  Among the pill bottles was one with no label. Trooper Brame asked Ms. Deaver what was in this particular bottle and Ms. Deaver indicated that she did not know. Trooper Brame opened the pill bottle and found metal pinchers and a metal screen, which he classified in his affidavit as being 'drug paraphernalia.'

"4.  Trooper Brame conducted a search of Ms. Deaver's vehicle and found a brass pipe with burnt residue in the driver's-side door panel. Additionally, Trooper Brame found a blue leather bag with several used needles and small Zip lock bags containing white crystal rocks. The crystal rocks field-tested positive for methamphetamine.

6

"5. KBI laboratory testing confirmed that the suspected methamphetamine was in fact methamphetamine. This stipulated facts statement incorporates by reference the KBI Laboratory report filed with this Court by the State's Notice of Intent as stipulated and admitted evidence.

"6. This stipulated facts statement incorporates by reference, subject to Paragraph 7, the following: the sworn Affidavit for Application of Warrant, State of Kansas, County of Butler, signed by Trooper Da'Von Brame on the 4th day of December, 2014; the transcript of the preliminary hearing held on May 6, 2015; the transcript of the initial motion to suppress hearing held on September 8, 2015; testimony at the subsequent motion to suppress hearing held on January 21, 2016; and the video of the incident entered into evidence.

"7. Ms. Deaver asserts and continues to maintain her objection to the introduction of any and all evidence found on her person and/or in her car on June 16, 2013, as previously stated in her motion to suppress and for the reasons set forth therein and those presented at the hearings thereon. Ms. Deaver retains her right of appeal on the issue of the suppression and admissibility of this evidence."

The trial judge found Deaver guilty of: (1) possession of methamphetamine, a level 5 drug felony; and (2) possession of drug paraphernalia. Deaver was sentenced to a controlling term of imprisonment for 11 months but was granted a 12-month probation.

ANALYSIS

The issue in this case is whether the district court committed reversible error when it denied Deaver's motion to suppress evidence that Trooper Brame obtained when he performed an investigatory stop based on a tip provided by an unidentified man. Deaver claims the district court erred in denying her motion because Trooper Brame lacked the requisite reasonable suspicion to perform the investigatory stop.

An appellate court uses a two-part standard when reviewing a district court's decision to deny a defendant's motion to suppress. First, the appellate court must determine whether the district court's findings are supported by substantial competent

7

evidence. *State v. Patterson*, 304 Kan. 272, 274-75, 371 P.3d. 893 (2016). Substantial competent evidence must be relevant and must contain substance that a reasonable person could accept as being adequate to support a conclusion. *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007). When reviewing a district court's factual findings, the appellate court does not reweigh the evidence or assess witness credibility. *Patterson*, 304 Kan. at 274. If the appellate court affirms the district court's factual findings, the appellate court will then review the district court's ultimate legal conclusion using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

If a trial court denies a motion to suppress, the moving party is required to object to the introduction of that evidence at the time it was offered at trial in order to preserve the issue for appeal. *State v. McCaslin*, 291 Kan. 697, 726, 245 P.3d 1030 (2011). In a bench trial consisting of stipulated facts, the lack of a contemporaneous objection does not prevent review of the suppression issue. *State v. Bogguess*, 293 Kan. 743, 746-47, 268 P.3d 481 (2012). Here, both parties agree that Deaver preserved her objection to the district court's denial of her suppression motion. The issue has been properly preserved for appeal.

Both parties in this case agree that the encounter between Deaver and Trooper Brame was an investigatory stop. The resulting issue is whether or not the officer had reasonable suspicion to perform an investigatory stop of Deaver. A law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that the person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Crawford*, 275 Kan. 492, 496, 67 P.3d 115 (2003); *State v. Green*, No. 111,618, 2015 WL 1514055, at *3 (Kan. App. 2015) (unpublished opinion). Kansas codified the Fourth Amendment search and seizure principals expressed in *Terry* in K.S.A. 22-2402(1). That provision provides that a law enforcement officer may only perform an investigative stop if "there is reasonable suspicion the person [subject to the stop] is committing, has

8

committed, or is about to commit a crime." *State v. Martinez*, 296 Kan. 482, Syl. ¶ 3, 293 P.3d 718 (2013); see K.S.A. 22-2402(1).

An investigatory stop without reasonable suspicion is illegal. See generally *Terry* 392 U.S. at 9; *Crawford*, 275 Kan. at 496; *Green*, 2015 WL 1514055, at *3. If police officers acquire evidence as the result of an illegal stop, the "fruit of the poisonous tree" doctrine generally bars admission of that evidence. *State v. Poulton*, 286 Kan. 1, 5-6, 179 P.3d 1145 (2008); *State v. Hachmeister*, No. 112,260, 2015 WL 8175905, at *6 (Kan. App. 2015) (unpublished opinion). Here, Deaver contends that Trooper Brame did not have reasonable suspicion per K.S.A. 22-2402 when he performed the investigatory stop and that any evidence obtained as a result of the stop should be suppressed as "fruit of the poisonous tree."

Whether an officer had reasonable suspicion to perform an investigatory stop depends on the "totality of circumstances in the view of a trained law enforcement officer." *Martinez*, 296 Kan. at 487. Reasonable suspicion is a lower standard than probable cause. Under this standard, law enforcement officers may draw inferences based on their own experiences and training, but an officer may not base their reasonable suspicion solely on a hunch. *Navarette v. California*, 572 U.S. ___, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014). Instead, an officer must base their reasonable suspicion on "'a particularized and objective basis for suspecting the particular person stopped of . . . criminal activity.' [Citation omitted.]" *Navarette*, 134 S. Ct. at 1685. The officer must also be able to indicate the specific facts that created the officer's reasonable suspicion for the stop. *State v. Marx*, 289 Kan. 657, 674, 215 P.3d 601 (2009); *State v. Easterberg*, No. 115,791, 2017 WL 66338, at 2 (Kan. App. 2017) (unpublished opinion).

Here, Trooper Brame articulated the reason he stopped Deaver was because he personally observed Deaver behaving as if she were intoxicated—the same behavior that the unidentified informant pointed out to Trooper Brame. Deaver argues that this tip was

9

insufficient to support reasonable suspicion, pointing out that the man who pointed Trooper Brame's attention to Deaver

> "did not inform [Trooper Brame] of any specific facts that would create a reasonable suspicion to investigate[, and] Trooper Brame never even asked the anonymous tipster for specific details about [Deaver]'s behavior that concerned him. He did not ask the unidentified man his name, or how long he had observed [Deaver]."

The reliability of information provided to law enforcement in the form of a tip can vary greatly. On one end of the spectrum you have informants who completely identify themselves and provide specific actionable information. These types of tips are generally found to be more reliable. On the other end of the spectrum you have informants who are totally anonymous and provide minimal information and little detail. These types of tips are often found less reliable. The informant in this case lies somewhere between the ends of this spectrum. While Trooper Brame did not obtain any identifying information from the informant, the informant was not totally anonymous. The informant sought out Trooper Brame and provided his information face to face with the officer. Trooper Brame was in a position to observe the informant and judge his attitude and demeanor. The informant was able to clearly identify Deaver as the person he was concerned about, her location, and the car she was driving.

Here, Deaver contends that the information that the informant gave Trooper Brame was insufficient to establish reasonable suspicion. In *Navarette*, the United States Supreme Court addressed the relationship between an anonymous tip and its basis for reasonable suspicion. The State relies on *Navarette* to respond that "[r]easonable suspicion can be formed on the basis of an anonymous tip alone."

Kansas caselaw provides a framework for evaluating whether an anonymous tip is a sufficient basis for reasonable suspicion for a stop. The factors to be considered are: (1)

10

the "type of tip or informant involved"; (2) the amount of detail the tip included about the observed criminal activity; and (3) "whether the police officer's personal observations corroborate the information supplied in the tip." *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1038 (1999); *State v. Lewis*, 54 Kan. App. 2d 263, 274, 399 P.3d 250 (2017); *petition for rev. filed* July 13, 2017.

Although anonymous tips alone will rarely be sufficient to provide reasonable suspicion, Kansas courts generally consider tips resulting from an informant's in-person interaction with an officer to be reliable. *Slater*, 267 Kan. at 700; *Lewis*, 54 Kan. App. 2d at 274-75. This is precisely what happened in the instant case. Trooper Brame never requested the informant's name, but the informant personally approached Trooper Brame to relay his concerns about Deaver's behavior.

Further, Kansas courts have found that anonymous tips are proper bases for reasonable suspicion "where the information given by the informant is detailed and corroborated by the officer's subsequent observation with regard to the details in the tip." *Slater*, 267 Kan. at 702; *Lewis*, 54 Kan. App. 2d at 275. Here, the information that the tipster gave Trooper Brame specifically identified Deaver as the person he was concerned about and raised a question as to whether Deaver was impaired. The informant told Trooper Brame that there was "a girl in a Texas car over [t]here, and I think she's loaded beyond repair." The informant then specifically described to Trooper Brame where Deaver was located: "See where that silver car is? Where the guy in the white shirt is? [She's] right next to it." Trooper Brame then confirmed that he understand who the informant was talking about and where she was located.

Deaver contends that this tip was not detailed enough to serve as a basis for reasonable suspicion, but Kansas courts have indicated otherwise. In *Slater*, the Kansas Supreme Court concluded that a "tip of a 'possible drunk driver' at a specific location, together with a specific description of the car, license tag number, and address of the

11

registered owner" was sufficient to establish reasonable suspicion. 267 Kan. at 696. Here, the informant personally pointed out Deaver's car to Trooper Brame. The informant specifically described the car as a "Texas car" and established her location. In a recent case, this court upheld a search based on an anonymous tip that included the driver's name, the make and model of the car, the license tag number, and the driver's location. *Green*, 2015 WL 1514055, at *5. In this case the tip from the informant identified the car in question, the Texas license plates, and Deaver's location.

Deaver contends that this exchange failed to produce any articulable facts upon which Trooper Brame could base reasonable suspicion because "[t]he tipster did not inform him of any specific facts that would create a reasonable suspicion to investigate[, and] Trooper Brame never even asked . . . for specific details about the woman's behavior that concerned him." The only case that Deaver cites to support this claim is the United States Supreme Court case *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). Deaver points out that the *J.L.* Court held that an anonymous tip was not reliable when an anonymous caller merely gave a description of the suspect's race and clothing. 529 U.S. at 271. Although *J.L.* addresses the reliability of anonymous tips, the facts in *J.L.* and those in our case are distinguishable. First, officers received the J.L. tip "from a call made from an unknown location by an unknown caller." 529 U.S. at 266. Trooper Brame, on the other hand, knew exactly where the informant was located because the informant spoke with the officer face to face.

Second, the tipster's allegations in *J.L.* were different from those at issue here. The *J.L.* informant alerted the police to the fact that the defendant was carrying a concealed gun. But in our case, the informant did not warn Trooper Brame about any type of concealed activity. Rather, the informant expressed concern about Deaver's public behavior that anyone near her could observe.

12

Further, the Supreme Court points out that the officers involved in *J.L.* could only rely on "the bare report of an unknown, unaccountable informant who neither explained how he knew about [the illegal activity] nor supplied any basis for believing he had inside information about [the defendant]." 529 U.S. at 271. The Supreme Court went on to explain that even if an anonymous tip allows the police to "correctly identify the person whom the tipster [meant] to accuse[, it] does not show that the tipster has knowledge of concealed criminal activity." 529 U.S. at 272. So while the informant in our case was unknown and, thus, unaccountable, the similarities between our tipster and the *J.L.* tipster end there.

Unlike the *J.L.* tipster, our informant approached Trooper Brame because of behavior that he personally observed. And unlike *J.L.*, our informant's tip did more than correctly identify Deaver. The tip alerted Trooper Brame to Deaver's public behavior, which he could personally observe. Finally, nothing about the tip in *J.L.* provided law enforcement with information about how the tipster knew about the defendant's criminal activity. But in this case, the circumstances surrounding Trooper Brame's encounter with the informant are sufficient to explain how he knew about Deaver's potential illegal activity. The informant personally observed Deaver and warned Trooper Brame about her behavior while the informant still had eyes on her. Thus, the tip the informant provided to Trooper Brame was sufficiently detailed.

*Slater* also indicates that an anonymous tip must be sufficiently corroborated by the officer's personal observations to serve as a basis for reasonable suspicion. 267 Kan. at 702. Here, Trooper Brame testified that he personally observed Deaver after his encounter with the informant. At the preliminary hearing, Trooper Brame testified that "[he] was able to observe the individual at the [pump], and [he] observed . . . what the person was doing and [that he] thought [Deaver] might have been under some type of drug or might have been impaired . . . ." Trooper Brame further elaborated that

13

"[w]hen she was at the fuel pumps she seemed a little confused. She was using her car . . . for balance and she'd walk from her [driver's side front door] to the fuel pump and to the back of the car, then she went back to the front of her car, and the whole time she was kind of using the car for a little bit of balance."

Later, at the hearing on Deaver's motion to suppress, Trooper Brame testified that he saw Deaver

"standing on the driver's side of her car. She was . . . standing outside the car. She was walking back and forth from her front door [to] the back of her car where the gas pump was. She walked back and forth . . . approximately two or three times, and she was walking very slow. She was using the car . . . for balance and she was walking really slow."

Although Trooper Brame presented nearly identical narratives at the pretrial proceedings, Deaver argues that his testimony was unreliable because of conflicting testimony regarding the contents of the tip. Deaver points out that at a subsequent hearing on the motion to suppress Trooper Brame testified that an "unidentified man told him he saw a woman stumbling around and having trouble filling her car up at a gas pump." Deaver then points to Trooper Brame's later testimony that "he did not receive a description from the tipster but witnessed the behavior from Ms. Deaver himself." Trooper Brame conceded that the tipster never said that Deaver was "stumbling around." But even if Trooper Brame had not conceded his error, the exact contents of the tip he received are not critical. Regardless of the precise language that the informant used, the tipster intended to warn Trooper Brame about a potentially impaired motorist. Trooper Brame testified that Deaver seemed to have to use her vehcile for balance which, according to the officer, is often a clue that a person is impaired. Thus, Trooper Brame's personal observations indeed corroborated the tipster's suspicions.

Deaver did not offer substantive evidence to refute Trooper Brame's testimony at these proceedings. Instead, Deaver challenges the officer's credibility. Questions pertaining to witness credibility are within the sole purview of the factfinder, and in bench trials like this one, the sole factfinder is the trial judge. See *State v. Pratt*, 255 Kan. 767, 769, 876 P.2d 1390 (1994); *State v. Dority*, 50 Kan. App. 2d 336, Syl. ¶ 3, 324 P.3d 1146 (2014). The trial judge found Trooper Brame's testimony to be credible, and this court will not reevaluate the testimony unless it was clearly not credible. Trooper Brame's testimony was consistent throughout the proceedings. There was substantial competent evidence to support the trial court's conclusion that Trooper Brame's observations corroborated the tip.

The tip at issue in this case is reliable when analyzed in accordance with the guidelines the Kansas Supreme Court set forth in *Slater*. Although Trooper Brame did not obtain the informant's identity, the tip the informant gave to the officer was sufficiently detailed. The informant personally pointed Trooper Brame to Deaver's exact car and location, and indicated that she was intoxicated. Trooper Brame then observed Deaver precisely where the informant indicated she would be and acting the way the informant said Deaver was acting.

The detail that the informant provided to Trooper Brame, along with his corroboration of the informant's tip through personal observation, provided a valid basis for the officer's reasonable suspicion. The district court did not err in denying Deaver's motion to suppress. The conviction is affirmed.

Affirmed.