NOT DESIGNATED FOR PUBLICATION

No. 117,252

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF LEAWOOD,
*Appellee*,

v.

JENNI J. LEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed April 20, 2018. Affirmed.

*Megan L. Harrington*, of Overland Park, for appellant.

*Andrew Karl Hall*, assistant city attorney, for appellee.

Before STANDRIDGE, P.J., HILL and BUSER, JJ.

PER CURIAM: A concerned citizen's tip to the Leawood Police Department regarding an erratic and dangerous driver led to the arrest of Jenni J. Lee for first-offense driving under the influence (DUI) and preliminary screening test refusal. Lee was convicted as charged in the municipal court and after a trial de novo on appeal to the district court. In this appeal, Lee argues the district court erred (1) by denying her motion to suppress, (2) by considering her preliminary breath test (PBT) refusal as evidence of guilt for the crime of DUI, and (3) by denying her motion for judgment of acquittal. Finding no error, we affirm.

1

On February 3, 2015, the City of Leawood charged Lee with first-offense DUI and preliminary screening refusal. Lee was convicted as charged following a bench trial in the Leawood Municipal Court. She subsequently appealed to the Johnson County District Court. Lee filed a motion to suppress, alleging that law enforcement lacked reasonable suspicion to stop and detain her. The district court held a combined suppression hearing and bench trial, where the following evidence was presented.

*Richard Baxter Cray III*

Richard Baxter Cray III testified that on February 3, 2015, he was driving south on State Line Road near 91st or 92nd Street in Leawood, Kansas, when he observed a silver Mercedes driving erratically in front of him. According to Cray, he was stopped at a stoplight behind the Mercedes when the car suddenly reversed and almost backed up into his car, only stopping when Cray honked his horn. Cray said he followed the Mercedes through the stoplight and witnessed the car weave in and out of its lane and swerve into the opposite lane, all while traveling at a very low rate of speed. Concerned about this erratic and dangerous car on the road, Cray called the police to report the driver as he continued to follow the Mercedes. Cray testified the Mercedes ultimately stopped at a cul-de-sac near 97th Terrace and Lee Boulevard. Cray parked down the street from the Mercedes and stayed on the phone until the police arrived approximately five minutes later. Cray did not speak to the police on the scene directly but later provided an official statement via e-mail. Cray could not identify Lee as the driver of the Mercedes and admitted that he could not recall whether he had identified the driver as male or female or whether he had been able to identify the driver's race.

*Officer Tony Woollen*

Leawood Police Officer Tony Woollen testified that around 8 p.m. on February 3, 2015, he was dispatched to 97th Terrace and Lee Boulevard regarding a possible intoxicated driver. Upon arrival, Woollen located a silver Mercedes car that matched the description provided to dispatch. Woollen turned on his police vehicle's rear flashers and made contact with Lee, who was sitting in the driver's seat of the Mercedes with a dog in her lap. Woollen said that he asked Lee for her driver's license and that he asked where she was going. According to Woollen, Lee responded she was trying to get home and pointed to a nearby house, whose address did not match the home address Lee had provided to Woollen. Woollen noted that Lee appeared to be very disoriented and distant, that her speech and mannerisms were slow, and that her responses were delayed. Woollen testified that he spoke with Officer Andrew Maxwell, who had also arrived at the scene, about whether to conduct field sobriety testing based on Lee's obvious disorientation and the report of erratic driving. Woollen did not detect an odor of alcohol on Lee's person and admitted that any erratic driving could have been caused by the dog on her lap. While Woollen ran Lee's driver's license through dispatch, Maxwell spoke with Lee.

*Officer Andrew Maxwell*

Officer Maxwell testified that when he made contact with Lee, she was standoffish, quiet, and appeared to be shielding herself behind her dog. After engaging in conversation with Lee, Maxwell said he smelled an odor of alcohol coming from the car. Maxwell noted that Lee's explanation about where she had come from and where she was going did not coincide with her location. Maxwell testified that when he asked Lee if she had been drinking, she admitted to having a glass of wine about four hours earlier. After asking Lee to exit the Mercedes to speak with him outside, Maxwell said Lee had a hard time placing her dog inside a kennel on the passenger seat, even though the dog was not resisting. According to Maxwell, Lee then flung open the door, used both hands to

3

"catapult" herself out of the car, and had difficulty maintaining her balance once outside. Maxwell testified he again smelled an odor of alcohol. Based on his suspicion that Lee was intoxicated, Maxwell conducted field sobriety tests. Maxwell testified that Lee could not keep her balance while he was instructing her on the nine-step walk-and-turn test. Lee failed the test, exhibiting seven out of eight clues of impairment. Maxwell further testified that Lee also failed the one-leg-stand test by exhibiting two out of four clues of impairment. Based on his experience and Lee's performance on the tests, Maxwell believed Lee was under the influence of alcohol. Maxwell asked Lee to take a PBT, but she refused. Lee was then arrested and transported to the police station, where she also refused to take an evidentiary Intoxilyzer breath test. Maxwell admitted that he did not see Lee driving the car, and he could not say for sure whether the car was running during his interaction with her.

Following this testimony, the district court denied Lee's motion for judgment of acquittal and motion to suppress and found Lee guilty of DUI and refusing a preliminary screening test. The court subsequently denied Lee's motion for new trial or judgment of acquittal. The district court sentenced Lee to 30 days in jail, but granted her 12 months' probation following compliance with a 48-hour minimum mandatory jail term and ordered Lee to pay fines in the amount of $950.

ANALYSIS

Lee raises three issues on appeal. First, Lee argues the district court erred by denying her motion to suppress. Second, Lee claims the district court improperly considered her PBT refusal as evidence of her guilt for the crime of DUI. Third, Lee contends the district court erred by denying her motion for judgment of acquittal. We address each of Lee's allegations in turn.

4

*Motion to suppress*

Lee argues the district court erred by denying her motion to suppress. Specifically, Lee contends her initial seizure and continued detention after Officer Woollen's contact were unsupported by reasonable suspicion of criminal activity.

A district court's decision on a motion to suppress is subject to a bifurcated standard of review. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Substantial competent evidence is evidence that is both factually and legally relevant and sufficient for a reasonable person to rely upon it to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *Patterson*, 304 Kan. at 274. If the appellate court affirms the district court's factual findings, the appellate court will then review the district court's ultimate legal conclusion using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

In denying Lee's motion to suppress, the district court judge stated:

"So what we have is we have a citizen following a vehicle with a description that matches the description—well, makes a call to—observes certain driving behavior. The citizen calls the police. The police arrive on the scene in the exact vicinity. I mean, I think the citizen was maybe a street over, but he saw the vehicle turn into the street where actually in this case the defendant's vehicle was situated and so the—and the vehicle was stopped. I think that's one of the important facts, is that the officer did not, in fact, pull this vehicle over, the defendant's vehicle.

"The defendant was at the—in the driver's seat of the vehicle that matches the description of Mr. Cray, Mr. Cray's description. There is no lights and sirens. The car is not blocked in.

5

"The officer approaches the vehicle and inquires of the defendant as to where she was coming or where she was going. It fits all of the factual situations that the citizen has reported coming from the direction in which he said he saw this erratic driving behavior.

"There is a detention of sorts, I guess, to find out more information but mainly because here's the defendant sitting in the driver's seat in some way or another with the vehicle functioning. I don't think we ever got to whether the engine was running or the lights were on, but she also has her dog sitting on her lap which would be something that would alarm an officer if, in fact, that driver was going to drive off and so that's when everything starts to come together at least in the investigation and then officer—the second officer arrives and he smells the odor of alcohol, Officer Maxwell, who is evidently the DUI officer at the time. There is no other vehicles around. I mean, we're not talking about going through rush hour traffic and somebody trying to pick out one Mercedes within that neighborhood, that was the only Mercedes in the neighborhood.

"So the Court is going to find that the officer had sufficient articulable suspicion, that at least some sort of investigation needed to proceed and that as the investigation did proceed, then he developed sufficient evidence to become reasonably suspicious of a—of the violations of the law and then developed that even further through the field sobriety testing, all the other interviews that took place.

"So the Court is going to deny the motion to suppress and consider the evidence that was presented here at trial."

The parties appear to agree that the encounter between Lee and law enforcement was an investigatory stop. At issue is whether the officers had reasonable suspicion to conduct this investigatory stop. A law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that the person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Crawford*, 275 Kan. 492, 496, 67 P.3d 115 (2003). The Kansas Legislature codified the Fourth Amendment search and seizure principles expressed in *Terry* in K.S.A. 22-2402(1). That provision provides that a law enforcement officer may only perform an investigatory stop if "there is reasonable suspicion the person [subject to the stop] is committing, has committed, or is about to

6

commit a crime." *State v. Martinez*, 296 Kan. 482, Syl. ¶ 3, 293 P.3d 718 (2013); see K.S.A. 22-2402(1).

An investigatory stop without reasonable suspicion is illegal. See *Terry*, 392 U.S. at 9; *Crawford*, 275 Kan. at 496-97. If police officers acquire evidence as the result of an illegal stop, the "fruit of the poisonous tree" doctrine generally bars admission of that evidence. *State v. Poulton*, 286 Kan. 1, 5-6, 179 P.3d 1145 (2008). Here, Lee contends that Officer Woollen did not have reasonable suspicion under K.S.A. 22-2402(1) when he performed the investigatory stop and that any evidence obtained as a result of the stop should be suppressed.

Whether an officer had reasonable suspicion to perform an investigatory stop depends on the totality of the circumstances in the view of a trained law enforcement officer. *Martinez*, 296 Kan. at 487. Reasonable suspicion is a lower standard than probable cause. Under this standard, law enforcement officers may draw inferences based on their own experiences and training, but an officer may not base his or her reasonable suspicion solely on a hunch. *Navarette v. California*, 572 U.S. __, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014). Instead, an officer must base reasonable suspicion on "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" 134 S. Ct. at 1687. The officer must also be able to articulate the specific facts that created the officer's reasonable suspicion for the stop. *State v. Marx*, 289 Kan. 657, 674, 215 P.3d 601 (2009).

In this case, Officer Woollen's articulated reason for making contact with Lee was Cray's report of an erratic driver in a silver Mercedes. But Lee argues that Cray's tip was insufficient to provide reasonable suspicion because Cray only gave minimal details about the car and was unable to identify the gender or race of the driver. Lee also notes that almost five minutes elapsed prior to the officers' arrival at the scene, during which time Cray did not have the Mercedes in his sight continuously. By noting this fact, Lee

seems to suggest that someone else could have entered or exited the car prior to the officers' arrival. Finally, Lee asserts that she should have been permitted to leave after Officer Woollen made the initial contact because he did not detect an odor of alcohol and he observed the dog on her lap, which could have explained the reports of erratic driving.

The reliability of information provided to law enforcement in the form of a tip can vary greatly. The type of tips that are generally the most reliable are those involving informants who completely identify themselves and provide specific actionable information. See *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1038 (1999).

> "[W]here a motorist calls a law enforcement agency, identifies [himself or] herself, and gives firsthand information [he or] she is following a car being driven at that very moment on a public highway in such a manner as to endanger the lives of the caller and other motorists, there is an adequate showing of the informant's basis of knowledge and veracity to support reasonable suspicion justifying the stop for further investigation." *State v. Partridge*, 29 Kan. App. 2d 887, 891, 33 P.3d 862 (2001).

Cray gave firsthand information to law enforcement that a reckless driver was on a public roadway. He identified himself and, at the very least, provided information relating to the vehicle's make, color, and body type and detailed the vehicle's direction of travel and its final location. Cray stayed at the scene until the police arrived and later provided an official statement to the police via e-mail. When Officer Woollen arrived at the reported location, he saw a car matching Cray's description. Thus, Cray's tip provided a valid basis for Woollen's reasonable suspicion at that point. Upon making contact with Lee, Woollen found her to be disoriented, slow, and confused about where she was. Notably, Lee never denied that she had been driving the car. Given that Cray's tip indicated a possible intoxicated driver, Lee's continued detention for further investigation was valid and continued to be supported by reasonable suspicion. See *Slater*, 267 Kan. at 699 ("[D]etermination of whether reasonable suspicion existed under the totality of the circumstances is affected by the threat a possible drunk driver poses to public safety.").

8

Lee's arguments are no more than an invitation to reweigh the evidence, which we cannot do. See *Patterson*, 304 Kan. at 274. We find substantial competent evidence supports the district court's finding of facts and that those facts support the legal conclusion drawn by the court that the officers had reasonable suspicion to detain Lee. The district court did not err in denying Lee's motion to suppress.

*Preliminary breath test refusal*

Next, Lee argues the district court erroneously relied on her refusal to submit to a PBT as evidence of her guilt for the crime of DUI. Lee contends that without evidence of her PBT refusal, the evidence was insufficient to support her DUI conviction.

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

In finding Lee guilty of the charged crimes, the district court stated, in relevant part:

> "[Lee] refused the PBT. The Court could find and would indicate that the case law certainly allows for the Court to consider the refusal of a PBT as some test of admission that there may be a reason to refuse that, mainly the person has consumed alcohol to the extent that they are over the legal limit."

As support for her argument that the district court erroneously relied on her PBT refusal to find her guilty of DUI, Lee cites this court's opinions in *State v. Hardesty*, 42

9

Kan. App. 2d 431, 437-38, 213 P.3d 745 (2009), and *State v. Wahweotten*, 36 Kan. App. 2d 568, 575-76, 143 P.3d 58 (2006), where panels of our court held that evidence regarding a defendant's refusal to submit to a PBT is admissible to prove the traffic infraction of refusal to submit to a PBT but is not admissible to prove a charge of DUI. In both of these cases, the panels found that the district court had erred by not giving a limiting instruction directing the jury to consider evidence of the defendant's PBT refusal as it related to the charge of refusal to submit to a PBT and to disregard the refusal as it related to the DUI charge. Nevertheless, the erroneous admission of this evidence did not affect the trial's outcome in either case because the remaining evidence of guilt on the DUI charge was overwhelming in both cases. *Hardesty*, 42 Kan. App. 2d at 438; *Wahweotten*, 36 Kan. App. 2d at 577.

Lee argues that, unlike in *Hardesty* and *Wahweotten*, the district court's improper consideration of the PBT refusal affected the outcome of her case because the remaining evidence of guilt was not overwhelming.

Lee's argument fails for multiple reasons. First, *Hardesty* and *Wahweotten* are distinguishable in that both cases were tried to a jury. Lee's case was heard at a bench trial before the district court, so we are not concerned with issues relating to improperly admitted evidence or whether a limiting instruction should have been given. Second, it is unclear whether the district court actually relied on Lee's PBT refusal in determining her guilt on the DUI charge. The court never explicitly said that it was relying on this evidence, only stating, "The Court *could* find . . . ." (Emphasis added.) In any event, Lee's PBT refusal was hardly the only evidence referenced by the district court in finding Lee guilty of DUI. The court also mentioned Lee's erratic and reckless driving, the odor of alcohol on Lee, Lee's admission to drinking alcohol, Lee's difficulty in maintaining her balance, Lee's failed field sobriety tests, and Lee's refusal to take the Intoxilyzer breath test at the police station, which the court was allowed to consider. See K.S.A. 2017 Supp. 8-1001(k)(7). Significantly, the court also reviewed a dash camera video recording of

10

Lee's encounter with law enforcement. Throughout the video, Lee appeared to stumble, collapse, and was unable to keep her balance during the field sobriety tests. When viewed in a light most favorable to the City, the evidence of Lee's guilt for DUI is overwhelming, even without considering the PBT refusal.

*Judgment of acquittal*

After the close of the City's evidence, Lee moved for judgment of acquittal, arguing that the City was required to introduce into evidence the ordinance that Lee allegedly violated so that the district court could determine whether the City had proved the elements of the offense. After hearing argument, the court denied the motion. Specifically, the judge stated:

> "[T]he Court is supposed to presume to know what the law is with regard to the state law as well as the municipal court law, that's why we have a de novo appeal to the District Court over municipal court ordinance violations. . . . [I]f this was the district attorney's office coming in here and prosecuting a case, I don't think the district attorney is required to present the Court the statutory framework under which the case should be found guilty or not guilty. So I am thinking the law would be likewise with a municipal appeal that the Court is presumed to know what the law is, when a case is brought here. . . .
>
>    . . . .
>
>    ". . . I'll find that there is no obligation on the part of the City to present what the municipal ordinance is, that the Court is presumed to know what the law is. The Court does know so I'm not going to say that I don't know, and so I'll deny your motion on that basis."

Lee renewed this argument in her motion for new trial, which the district court denied.

On appeal, Lee makes a different argument. Rather than challenging the City's failure to introduce the ordinance into evidence, Lee instead argues that the district court

11

erred by failing to explicitly take judicial notice of the ordinance, as required by K.S.A. 60-411.

Issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). "Although exceptions to this general rule exist, parties seeking to raise an issue for the first time on appeal must assert the exceptions." *State v. Beltz*, 305 Kan. 773, 776, 388 P.3d 93 (2017); see Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34). Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Lee does not acknowledge her failure to raise this argument below or otherwise explain why an exception to the general rule should apply to justify our review of the issue. Lee's failure to explain why an exception applies is fatal to her appeal.

But even if this court were to reach the merits of Lee's argument, she is not entitled to relief. Kansas law recognizes that, without request by a party, a district court may take judicial notice of "duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state." K.S.A. 60-409(b)(1). Lee's claim of error is premised on K.S.A. 60-411, which provides: "If a matter judicially noticed is other than the common law or constitution or public statutes of this state, the judge shall indicate for the record the matter which is judicially noticed." The district court's remarks as set forth above clearly reflect that the court took judicial notice of the City's DUI ordinance. Lee's argument necessarily fails.

Affirmed.